## WILLIAMS ET AL. v. KETCHAM.

[No. 5,598.   Filed March 16, 1906.]

ESTOPPEL. — *Misrepresentations.* — *Sales.* — *Mortgages.* — *Deeds.* —*Fraud.*—A landowner is not estopped from denying the validity of a mortgage where he in good faith represented to the mortgagee's attorney that he had sold to a third party his farm and such attorney afterward made and delivered to such third party the deed to be executed by the landowner to such third party, which deed was returned by such third party with the landowner's name and notary's certificate forged thereon, and the mortgagee loaned the money to such third party in good faith thinking the deed genuine.

From Daviess Circuit Court; *H. Q. Houghton,* Judge.

Suit by Silas M. Ketcham against Aramittie Williams and another. From a decree for plaintiff, defendants appeal. *Affirmed.*

*W. R. Gardiner, C. G. Gardiner* and *T. D. Slimp,* for appellants.

*Ogden & Inman* and *C. K. Tharp,* for appellee.

Comstock, J.—This suit was instituted by the appellee against appellant Aramittie Williams and her co-appellant Cramer, to quiet title to real estate. The issues were joined and the cause tried upon the first paragraph of the complaint, which was an ordinary short form to quiet title, and the answer of Williams thereto by general denial. The law stated thereon, and decree entered in behalf of appellant Williams special findings were made, conclusions of law stated thereon, and decree entered in behalf of appellee against appellant Williams and co-appellant Cramer, quieting the title to the real estate in question and setting aside the mortgage alleged to have been executed by Cramer to Williams.

The errors relied upon for a reversal are that the court erred in its conclusions of law one and two and each of them separately and severally.

The special findings show that the defendant Aramittie Williams is a widow, and for many years has been a resident of the city of Washington, Daviess county, Indiana; that Milton S. Hastings is and has been for eighteen years an attorney at law in good standing and that his law office during all of said time has been situated in the city of Washington, in said county and State; that said Aramittie was appointed administratrix of her husband's estate, and she retained said Hastings as her attorney in the settlement of said estate, and he was also her personal attorney and legal advisor; that the plaintiff and the defendant George Cramer are and ever were strangers to the defendant

Aramittie Williams, and that said Aramittie Williams, at the time of the occurrences that are hereafter found to have taken place, had no personal knowledge of the location or value of said real estate, and that the plaintiff and the location of said real estate were, at the time of the occurrences hereinafter found, well known to her attorney, and that said defendant Cramer was a stranger to the plaintiff and to said attorney, except as shown by the facts hereinafter found; that the defendant George Cramer was a man apparently about forty-five years of age and of respectable appearance, and whose demeanor and appearance were those of a business man and a prosperous farmer; that on October 22, 1903, Stanley B. Johnson was a regularly appointed and acting notary public within and for said county and State, whose office as such was situated at the town of Elnora, in said county and State, and about three miles from said real estate, and that said real estate was of the value of $8,500; that a few days prior to October 20, 1903, the defendant George Cramer visited the plaintiff at his farm, described in the first paragraph of the complaint, and that was the first time that he and the plaintiff ever met; that said Cramer again visited the plaintiff at his farm, and as a result of negotiations between them, they entered into a parol agreement by which it was agreed between them that said Cramer was to pay him $9,000 in cash for his said farm; that said Cramer on October 17, 1903, visited said city of Washington, and was there introduced to said Hastings by William Beck as the purchaser of plaintiff's farm, and said attorney was then informed by said Beck that said Cramer wanted to borrow $2,500, and give a mortgage on said farm to secure the payment of said loan, whereupon said attorney informed them that he had a client who might make such a loan, and that he would let them know on the following Monday, all of which took place without plaintiff's knowledge; that on the following Tuesday, October 20, 1903, the plaintiff and said Cramer went

to the office of said attorney together, when and where the plaintiff said to said attorney, referring to said Cramer: "This is Mr. Cramer. I have sold him my farm, and he wants to borrow $2,500 on it;" that the attorney informed the plaintiff and the defendant Cramer that his client would loan $2,500 on the farm, but that she would require an abstract of the title thereof showing the same to be good; that the plaintiff then produced an abstract of title to said farm, bringing the same down to the time of the plaintiff's purchase thereof, and employed said attorney to complete the same, and the attorney informed them that the abstract would be completed on Thursday, October 22; that on October 22, 1903, said Cramer, by himself, went to the office of said attorney, when he was informed by him that the title to said real estate was good, and that his client was ready to close up the loan; that said Cramer then requested said attorney to write a deed for the plaintiff and his wife to execute to him for said real estate, saying that he would take the same out to the plaintiff and procure its execution, and return the following day and close up the loan, whereupon said Hastings wrote said deed and gave the same to said Cramer, who went away with the same; that on said October 22, said Cramer wrote a letter to the plaintiff informing him that he would call at the farm on the following Monday, October 26, and close up the deal, which letter was received by the plaintiff at Elnora on October 22, but said Cramer never went to the plaintiff's home after writing said letter, and that the writing of said letter by said Cramer and the receipt thereof were unknown to the appellant and her attorney until November 5, 1903; that on October 23, 1903, said Cramer returned to the office of appellant's attorney with the deed that had been written as aforesaid, bearing the forged names of the plaintiff and his wife thereto, and a forged certificate of acknowledgement by them before said Stanley B. Johnson as notary public, whose name and seal were attached thereto,

with a correct statement of the time when the commission of said notary public would expire; that there was nothing in the appearance of the deed calculated to excite suspicion with respect to its genuineness in the mind of a cautious lawyer or person; that it was immediately thereafter duly recorded in the proper record of said county, whereupon said Cramer executed a mortgage on said real estate to the defendant Aramittie Williams to secure the payment of a note in her favor then executed by him to her for $2,500, said note and mortgage having been drawn up by said attorney at the request of said Cramer, which mortgage was duly recorded in the mortgage records of Daviess county, and said Aramittie Williams at the same time gave to said Cramer her check for $2,500 on the People's National Bank of the city of Washington, and which, upon presentation of said check, said bank paid to him and charged the same to her account; that immediately upon the receipt of said money said Cramer left said city and county for parts unknown to said attorney and to the parties to this action, and his whereabouts is still unknown to them; that the plaintiff did not inform or notify said attorney nor said Aramittie Williams that he had not sold his farm to said Cramer, after having informed said attorney on October 20 that he had done so, nor communicate with them, or either of them, until November 5; that said Cramer has no property or means in said county or State; that said attorney, before the consummation of said loan, communicated to said Aramittie Williams all of said facts relating to the sale of said real estate by the plaintiff to said Cramer; that said attorney and said Aramittie Williams in all that they each did in relation to and in effectuating said loan acted in good faith and in the belief that said deed was the genuine deed of plaintiff and his wife; that said sum of $2,500 has not, nor has any part thereof, been repaid to the defendant Aramittie Williams; that said Aramittie Williams at the time of said transaction

was unused to business transactions; that all through the
month of October, 1903, and for a long time theretofore
and ever since, there was and is a line of railroad, telegraph
and telephone between said city of Washington and the
town of Elnora, and that on said railroad there has run
during all of said time two passenger-trains each way each
day between said city of Washington and the town of
Elnora, all of which trains carry United States mail, and
at each of which city and town there was a station on said
railroad and public telegraph and telephone offices; that
when the plaintiff employed said Hastings to complete said
abstract he agreed to pay him therefor a sum not to exceed
$4 when the same should be completed, and that when the
defendant Cramer went to the office of said Hastings on
October 22, 1903, he paid to said Hastings said sum of $4,
and informed him at the same time that Ketcham had sent
the money by him (said Cramer) to him (said attorney) as
he (said Ketcham) could not come down on that day and
at the same time said Cramer required of said attorney a
receipt of the payment of said money for said Ketcham;
that appellee obtained title to the real estate by purchase
and deed in the month of September, 1899; that before
October 22, 1903, and after the defendant had entered
into negotiations with said attorney to secure a loan of
$2,500, the defendant Aramittie Williams instructed her
said attorney to make a loan of her money to said Cramer
upon the plaintiff's said real estate when the abstract of
title thereto was brought down; that on October 22 the
appellant and said attorney knew that appellee and wife
had not yet executed a deed to Cramer; that the defendant
Aramittie Williams was induced to give said check for
$2,500, to said Cramer and to accept said note and mort-
gage from him, in reliance upon the fact that the deed,
delivered by said Cramer, and which he and said attorney
caused to be filed for record in the office of the recorder of
said Daviess county, as above found, was made in good

faith, and that it conveyed the title to the plaintiff's real estate to said Cramer, and from the further fact that defendant Ketcham had said that he had sold his farm to Cramer; that at no time during the negotiations of said Cramer for said loan of $2,500 from the defendant Aramittie Williams did she or said attorney ever make any inquiries of said Cramer as to his financial condition, or as to whether or not he had paid the plaintiff for his said real estate; that the deed dated October 22, 1903, and which said Cramer and said attorney caused to be filed for record, as above found by the court, was never executed by the plaintiff and his wife, Emma Ketcham, or by either of them, and was never executed by any other person for them, or either of them, with their consent or knowledge, but that said deed was falsely, fraudulently and feloniously forged by said Cramer for the purpose of fraudulently procuring said sum of $2,500; that the certificate of acknowledgement annexed to said deed was never made by said Stanley B. Johnson, but that said certificate was also forged by said Cramer in the same manner as said deed and for the same purpose; that the defendant Cramer never at any time paid the plaintiff any money for any purpose; that there was no communication between the appellant, said attorney and the appellee after October 20 until November 5, 1903; that said attorney prepared the papers in the matter of making the loan in good faith and as a friendly aid to appellant Williams; that on October 20, 1903, said attorney was acting as agent and attorney for the defendant Aramittie Williams for the purpose of making said loan of $2,500 for her to said Cramer, and that he continued to act as her agent and attorney for that purpose up to and including October 23, 1903; that while the plaintiff was at the office of said attorney on October 20, 1903, and that from that time until October 26, 1903, the plaintiff believed in good faith that if the title to his said real estate should prove to be all right, when brought down to date,

said Cramer intended to purchase and accept a deed of conveyance for the same from the plaintiff and his wife, and to pay the whole of the consideration therefor, amounting to the sum of $9,000, upon the delivery of said deed to him by the plaintiff; that the plaintiff never had any knowledge or information about the recording of said forged deed dated October 22, 1903, or about the execution of said note and mortgage by said Cramer, until November 5, 1903, and that the plaintiff never had any information or knowledge about the recording of said deed and mortgage, or either of them, as above found, until November 5, 1903; that in all the negotiations of the plaintiff with the defendant Cramer and with said attorney said plaintiff acted in good faith, and did not by anything that he said or did intend to mislead or deceive any person to such person's detriment or injury; that all negotiations and communications that were had between the defendant Cramer and said attorney, and all business transacted by them after October 20, 1903, was carried on and done without the knowledge or consent of the plaintiff; that the defendant Cramer was a stranger in Daviess county, Indiana, while he was negotiating for the purchase of the plaintiff's said real estate, and while negotiating for and securing the loan from the defendant Aramittie Williams, and was a common swindler, and as soon as he had secured the money on said loan of $2,500 he at once fled to parts unknown, and his whereabouts has ever since been unknown.

Upon the foregoing facts the court stated its conclusions of law: (1) That the plaintiff is the owner of the land described in the first paragraph of his complaint, and entitled to have his title thereto quieted as against defendants; (2) that the mortgage executed by the defendant George Cramer to the defendant Aramittie Williams is not a valid lien against said real estate, and is a cloud upon plaintiff's title, and ought to be removed.

The two separate conclusions of law may be properly considered together. That the deed from appellee and wife was a forgery there is no question. A mortgage resting upon a forged deed can convey no rights, unless it be upon the grounds of estoppel. It is argued in this case that the appellant Williams, a good-faith mortgagee, was induced to accept a mortgage as security for a loan, upon the statement of the owner of the lands that he had sold them to the proposed mortgagor, made to the mortgagee with the knowledge of the application by such proposed mortgagor for the loan, and that the appellee is estopped from denying the validity of the mortgage, even though at the time of the statement he had not executed a deed for the lands to such proposed mortgagor, and subsequently such mortgagor forged the deed of the owner of the lands to himself; that appellee, after having made said statement to the agent and attorney of appellant, and knowing that at a fixed time the condition upon which the loan was to be made would be determined, rendered himself amenable to the consequences of "standing by" while the appellant, upon the faith of such statement, parted with her money; that under the circumstances it will not avail the appellee that he did not intend to deceive or mislead the appellant.

The doctrine of equitable estoppel or estoppel *in pais* involves a question of legal ethics. It lies at the foundation of morals, and "applies whenever a party has made a representation by word or conduct which he can not in equity and in conscience prove to be false." In most instances whether the acts or admissions shall operate as an estoppel must depend upon the circumstances of the particular case. In Herman on estoppel and *res judicata,* the learned author treats exhaustively the subject under consideration, and concisely states the result of his research and judgment as follows: "A party will, in many instances, be concluded by his declarations or conduct which have influenced the

conduct of another to his injury. But in the application of this principle with respect to the title to real property, it must appear, first, that the party making the admission, by his declaration or conduct, was apprised of the true state of his own title; second, that he made the admission with intent to deceive, or with such culpable and careless negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of all means of acquiring such knowledge; and further, that he relied directly on such admission, and will be injured by allowing its truth to be disproved." 2 Herman, Estoppel and Res Judicata, §948.

The expressions of Pomeroy and other text-writers are to the same effect. 2 Pomeroy, Eq. Jurisp. (3d ed.), §807, and 2 Herman, Estoppel and Res Judicata, §933, in substance say that while it is well settled that the owner of land may, by acts *in pais* preclude himself from asserting his legal title, it must be obvious that the doctrine should be carefully and sparingly applied, and only on the disclosure of clear and satisfactory grounds of justice and equity. It is contrary to the letter of the statute of frauds, and it would greatly tend to the insecurity of title if they were allowed to be affected by parol evidence of light or doubtful character. Citing *Storrs* v. *Barker* (1822), 6 Johns. Ch. *166.

Applying the law to the facts specially found (1) was appellee apprised of the true state of his title? He certainly was, and made the statement, as shown by all the circumstances under which it was made, as meaning that he had negotiated its sale. (2) Did he make the statement with the intent to deceive, or with such culpable and careless negligence as to amount to constructive fraud? The court finds that in all the negotiations of the plaintiff with the defendant Cramer and with Hastings, said appellant's attorney, the plaintiff acted in good faith, and did not by

anything that he said or did intend to mislead or deceive any person to such person's detriment or injury; that all negotiations and communications that were had between the defendant Cramer and said attorney, and all business transacted by them after October 20, 1903, was carried on and done without the knowledge or consent of the plaintiff. (3) Was the appellant Williams destitute of all knowledge of the true state of the title, or of all means of acquiring such knowledge, and did she rely directly on said statement? The court finds that appellee on October 20, 1903, made the statement that he had sold his farm to Cramer; that on October 22, 1903, appellant Williams and her attorney both knew that appellee and wife had not conveyed the real estate in question to Cramer; that the loan was not made to Cramer until October 23, 1903. These findings are conclusive of the proposition that said appellant's attorney knew that when the appellee said he had sold his farm to Cramer that it was not true, and she and her attorney could not have relied upon that statement in making the loan. In Pomeroy, Eq. Jurisp. (3d ed.), §810, it is said: "The truth concerning these material facts must be unknown to the other party claiming the benefit of the estoppel, not only at the time of the conduct which amounts to representation or concealment, but also at the time when that conduct is acted upon by him. If, at the time when he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he can not claim to have been misled by relying upon the representation or concealment." Citing *Irving Nat. Bank* v. *Alley* (1880), 79 N. Y. 536, 540; *Pulsford* v. *Richards* (1853), 17 Beav. 87; *Lefever* v. *Lefever* (1864), 30 N. Y. 27; *Horn* v. *Cole* (1868), 51 N. H. 287, 12 Am. Rep. 111.

The findings show that appellant Williams had the means by which, with reasonable diligence, knowledge of the truth could have been ascertained. To quote from said appellant's brief: "In common parlance the word 'sold' does not necessarily include the idea that the necessary writing has been executed to transfer the legal title, but rather that the terms and condition of the sale have been agreed upon. In this instance the clear idea involved in the statement was that he (Ketcham) was ready to execute, if he had not already executed, a deed to Cramer, when arrangements should be made for the loan." It is clearly manifest from the findings, and the facts in connection therewith, that, at the time the statement was made, being the only time until after the consummation of the loan when the appellee had any conversation with appellant's counsel, it was understood by all the parties that appellee had made no conveyance. Appellee's statement did not mislead because of the facts and circumstances connected therewith, and it ought not, therefore, to estop him in asserting his title. We have not taken up each point presented in the able briefs of counsel, and do not refer to some of the authorities cited, because the references to Herman and Pomeroy, *supra,* cover the questions involved. But we have set out substantially the special finding of facts, and have endeavored to apply the law applicable thereto. We regret that so wicked a fraud should go unpunished, but are of the opinion that the conclusions of law are warranted by the facts found.

Judgment affirmed.

WILEY, J.—I concur in the conclusion.

## CONCURRING OPINION.

ROBY, C. J.—The representation by appellee that he had sold his farm, as made and understood, was true. He did not intend to include, nor was he understood as including, an assertion that he had transferred title. Evidence of

such transfer was furnished by a forged deed, for which appellee was in nowise responsible. He does not now have occasion to deny the truth of the statement made by him that he had sold the farm, and there is, therefore, nothing upon which to base an estoppel. For this reason alone I concur in the affirmance of the judgment.