## HEGARTY ET AL. *v.* CURTIS.

[No. 18,055. Filed December 21, 1950. Rehearing denied January 26, 1951. Transfer denied March 26, 1951.]

*J. M. Johns,* of Rockville; *Aikman, Piety & McPeak,* of Terre Haute, for appellants.

*Fred D. O'Rear; Dix, Dix & Patrick,* both of Terre Haute; and *McFaddin & McFaddin,* of Rockville, for appellee.

CRUMPACKER, J.—John Collett died testate March 15, 1899, seized of 516 acres of land in Vermillion County, Indiana. By a codicil to "Item III" of his will he devised said lands to his nephews Samuel Collett and Frederick Collett one-half each as tenants in common for life. At the death of either Samuel or Frederick Collett, if such decedent leaves a child born in lawful wedlock, the remainder in fee simple of such undivided one-half in said lands is devised to such child. If either the said Samuel or Frederick Collett shall die without leaving a child, born in lawful wedlock, the said one-half interest in said lands of him so dying is devised to the survivor for life and if such survivor shall have a child born in lawful wedlock living at his death then the remainder in fee simple of the whole of said lands is to go to and be vested in such child.

Frederick Collett died August 21, 1930, leaving one child, Marie Collett, the appellee herein, who was then a minor 11 years of age. On July 15, 1931, Samuel Collett commenced an action in the Vermillion Circuit Court against Marie Collett by a complaint in which it is alleged that he is the owner of a life estate in the whole of said lands and that the said Marie Collett is claiming an interest therein adverse to such life estate which claim is without right and a cloud upon

his title. Marie Collett being a non-resident of the state of Indiana, service of process was by publication and she being then about 12 years of age, the court appointed a guardian ad litem for her who filed an answer in general denial and thereafter, on September 2, 1931, the court rendered judgment in favor of Samuel Collett wherein it is decreed that he is the absolute owner of a life estate in the whole of said lands: "That the defendant, Marie Collett, claims an interest in said real estate adverse to the plaintiff's life estate interest, that said claim is without right and unfounded and that said claim is a cloud upon plaintiff's title in and to the real estate of plaintiff and in and to all of said real estate and that said cloud upon plaintiff's title be removed, that the claim of the defendant, Marie Collett, be declared null and void and that the title to the life estate interest in all of said real estate be forever quieted and set at rest in the plaintiff as against the defendant herein, Marie Collett, . . ."

Samuel Collett died December 26, 1933, leaving a daughter, Janet Tissott Collett, as his only surviving descendant. Janet, claiming to be the owner of the fee simple title to the whole of said real estate, sold it to one James Morgan and John C. Harvey through whom the appellants herein claim title and acquired possession.

Marie Collett, the appellee, reached the age of 21 years on July 20, 1940; on March 21, 1944, she married one Robert M. Curtis and on July 5, 1946, she commenced this action against the appellants, the purpose of which is (1) to partition said lands and have an undivided one-half thereof set off to her in severality; (2) to quiet her title thereto; and (3) to eject the appellants therefrom with damages for wrongful detention. The appellants answered in four paragraphs:

(1) Under Rule 1-3; (2) former adjudication based on the quiet title suit instituted by Samuel Collett on July 15, 1931; (3) the appellee's laches in asserting her rights; and (4) the 15 year statute of limitations. The case was tried to the Parke Circuit Court which found the facts specifically, stated conclusions of law favorable to the appellee on all three of her paragraphs of complaint and entered judgment accordingly.

In challenging this judgment the appellants first contend that the evidence shows conclusively that the appellee is not a daughter of Frederick Collett, *born in lawful wedlock*—a status necessary to bring her within the provisions of John Collett's will—and therefore the entire estate in the lands in question, after the termination of the life estates of Frederick and Samuel Collett, vested in Janet Tissott Collett, Samuel's only daughter and the appellants' remote grantor.

It must be conceded that the terms of John Collett's will exact of the appellee the status of being a surviving child of Frederick Collett *born in lawful wedlock*, as that term was intended by the testator. The facts surrounding the appellee's birth may be stated thus: On November 11, 1917, Frederick Collett and Augusta M. Speck, then 18 years of age, went from Virginia to Washington, D. C. where they procured a marriage license and went through a formal nuptial ceremony. At that time Frederick Collett had a living wife from whom he was not divorced but Augusta M. Speck had no knowledge of that fact and after the pretended ceremony in Washington she accompanied him to Richmond, Virginia, where they lived together as husband and wife and she became pregnant with child by him. Some time later she learned the truth concerning Collett's former marriage and that divorce proceedings were then pending in West Virginia brought by Frederick Collett against his former wife. Upon gaining

this information she insisted that they be remarried as soon as such divorce proceedings became final. On July 6, 1918, the West Virginia court entered its final decree and Collett's divorce from his former wife became absolute. On April 4, 1919, he remarried Augusta M. Speck with whom he had been living continuously as husband and wife since the pretended ceremony in Washington. Approximately three and one-half months later on July 20, 1919, the appellee was born, the daughter of Frederick and Augusta M. Collett.

On these facts the appellants base several contentions which they say destroy the appellee's status to take under the John Collett will. First, they assert that it is apparent that the appellee was conceived in the course of an adulterous relationship and was therefore not born in lawful wedlock. Second, the subsequent marriage of her parents, although making the appellee their legitimate child, did not effect a birth in lawful wedlock. Third, the divorce obtained by Frederick Collett in West Virginia from his first wife was void because he was not a resident of that state when he commenced divorce proceedings and he was then living in adultery with the appellee's mother and therefore his later marriage to her was also void. If the appellants are right in this last contention all other questions in the case become unimportant, because, under such circumstances, the appellee was not born in lawful wedlock and cannot take under the John Collett will. This question therefore merits our first consideration.

We are asked, through a collateral attack based on fraud, to deny full faith and credit to the decree of a West Virginia Court of record. This we cannot do unless it appears that the court which rendered it had no jurisdiction of the parties and subject matter of the litigation. *Williams* v. *North Carolina* (1942), 317 U. S. 287. It is established

law that a collateral attack on a divorce decree can be made for fraud only when such fraud induces the court to exercise a jurisdiction which, under the actual facts, it did not have. 27 C. J. S., Divorce, § 336, p. 1303; *State ex rel.* v. *Martin, Aud.* (1926), 198 Ind. 516, 154 N. E. 284. Fraud in the concealment of evidence, in the procuring of perjured testimony or other frauds perpetrated during the progress of the hearing do not go to the jurisdiction of the court and afford no basis for vacating a judgment. *Friebe* v. *Elder* (1914), 181 Ind. 597, 105 N. E. 151. But even so the appellants insist that there is circumstantial evidence tending to prove that Frederick Collett was not a resident of West Virginia when the divorce proceedings were commenced and that such fact goes directly to the court's jurisdiction. The trial court in the present case however did not consider such circumstances sufficiently convincing to overcome the inference that the West Virginia divorce was valid, as it specifically found that Collett's subsequent marriage to the appellee's mother was lawful. The evidence does not force us to a contrary conclusion.

We cannot agree with the appellants' contention that John Collett used the term "born in lawful wedlock" in his will as meaning *conceived and* born in lawful wedlock. It seems clear to us that he intended to exclude from inheritance any adopted or illegitimate child of Frederick Collett or any illegitimate child of doubtful fatherhood he might make legitimate by marrying its mother and acknowledging it as his own. Burns' 1933, § 6-2310. The legitimatizing statute above referred to was in existence at the time John Collett made his will and it is reasonable to infer that he intended to guard against the possibility that any child, made an heir of Frederick Collett through the operation of such statute, should take under said

will. In this respect the present case is distinguished from *Central Trust Company* v. *Skillin* (1912), 154 App. Div. 227, 138 N. Y. S. 884, upon which the appellants strongly rely. The appellee was conceived through a marriage contract which was illegal only because of the disability of one of the parties thereto. Before she was born such disability was removed and her parents were legally married. Webster's International Dictionary, Second Edition, defines the word "in" as "indicating inclusion within a limit of time; at any time during." Without dispute the appellee was born during the time her parents were joined in lawful wedlock and is of the blood line along which the testator desired his property to descend. In our opinion her status to take under the John Collett will is established.

The appellants next contend that the judgment obtained by Samuel Collett upon publication against the appellee, quieting title to a life estate in the whole of the real estate in controversy, is res adjudicata against the appellee in the present action wherein she asserts a fee simple title to an undivided one-half thereof. Their argument in support of this contention may be summarized as follows: If the appellee was a child of Frederick Collett born in lawful wedlock she became the owner of the fee simple in an undivided one-half of said real estate upon Frederick's death on August 21, 1930. That her present interest, whatever it may be, is identical with that which she had at the time of the quiet title judgment. That Samuel Collett took a life estate in one-half of said real estate on the death of the testator. If the appellee took a fee simple title on the death of Frederick Collett in the other half there was no life estate in that half for Samuel Collett to take. Therefore a judgment quieting title in Samuel Collett to a life estate in the whole of said lands neces-

sarily was an adjudication against the appellee's alleged fee simple interest in any part thereof.

We can agree with the appellants that so far as the appellee's fee simple interest tended to defeat Samuel Collett's life estate it was an issue in the quiet title suit and was adjudicated against her. As the Supreme Court said in *Jones* v. *Vert* (1889), 121 Ind. 140, 22 N. E. 882: "It is undoubtedly true that a judgment . . . in a suit to quiet title, is conclusive of any claim or title adverse to the plaintiff in that case, as against all who were made parties; and this is so whether the adverse interests, or titles, of the defendants are specially set up or not." Again the same court said in *Watson* v. *Lecklider* (1897), 147 Ind. 395, 45 N. E. 72: "An action to quiet title is prosecuted for the purpose of determining and quieting plaintiff's title. The theory upon which such an action is instituted is, that the defendant asserts, or sets up, some title, right, interest, or claim, in the lands adverse to plaintiff, and the ultimate purpose or object of the suit is to forever settle and put at rest such claims or title of whatever character. A judgment, in favor of the plaintiff, has the effect to conclusively adjudicate and settle his title as against the defendant, and forever bars the latter from asserting any claim, interest, or title, which he did present, or might have presented, at the time the judgment was rendered."

As applied to the case at bar we construe these decisions to mean that the appellee's fee simple title to an undivided one-half of the real estate in controversy has been wiped out and forever barred by the judgment under discussion as an adverse claim destroying, or beclouding in any way, Samuel Collett's life estate therein. The appellants say, however, that the effect of the judgment goes far beyond that. They insist that

when Samuel Collett went into court to quiet title to his life estate as against an alleged fee simple title in the appellee, he represented his daughter for the purpose of quieting her title as a contingent remainderman in fee simple against any adverse claim of the appellee and the judgment he procured quieting the title to his life estate established his daughter's right to take all the lands in fee simple at his death. This position is taken on the theory that Janet Tissott Collett, though not a party, would have been bound by the quiet title decree had it been adverse to her father and therefore a favorable decree bound the appellee as against the interests of Janet Tissott Collett through mutuality of estoppel by virtual representation.

There is no case in Indiana decisive of this precise question but the reasoning back of the doctrine of virtual representation as applied to contingent remainderman is expressed thus in 50 C. J. S., Judgments, § 776, p. 307: "Persons having a remote, contingent, or expectant interest in realty are bound by a judgment in an action concerning the property, although they are not parties to the suit, if their interests are properly represented, as by the holder of the first estate of inheritance, or by persons who have the same interests and are equally certain to bring forward the entire merits of the question, so as to give the contingent interest effective protection . . ." It would seem, then, that the validity of the appellants' argument depends upon the binding effect of the former quiet title decree on Janet Tissott Collett had it been adverse to Samuel Collett. It must be remembered that Samuel Collett sought to quiet title to a life estate in the *whole* of the real estate in controversy. The fact that he succeeded certainly did not adjudicate the question as to whether Janet Tissott Collett was his daughter "born in lawful wedlock." Had the judg-

ment been for the defendant, Marie Collett, certainly she would have been in no position to quiet her title to the whole of said real estate on the theory that Janet Tissott Collett's status to take under the John Collett will had been adjudicated against her. If the established right of Samuel Collett to a life estate in the whole of said real estate necessarily fixed the status of his daughter as a contingent remainderman we could see the applicability of the doctrine of virtual representation. However it fixed no such status because, even though Samuel Collett had such a life estate, nevertheless Janet Tissott Collett may have been born out of wedlock in which event, the appellee, having been adjudicated to have no interest in the land, the Collett Home for Orphans became the remainderman. In our opinion the judgment in the former quiet title suit was not mutually binding on the appellee and Janet Tissott Collett and cannot be made so through the doctrine of virtual representation. That being so it is not res adjudicata of the present controversy.

Nevertheless the appellants contend that the rule of mutuality is not a part of the doctrine of former adjudication where the party who has had one opportunity for a day in court undertakes another. That the principle of public policy which gives every man an opportunity to prove his case also limits him to one such opportunity. *Kavis* v. *Schimmel* (1938), 213 Ind. 514, 13 N. E. 2d 565. We realize that many courts have abandoned the requirement of mutuality where the liability of the defendant asserting the plea of res adjudicata is dependent on or derived from the liability of one who was exonerated in an earlier suit brought by the same plaintiff on the same facts. *Bernhard* v. *Bank of America* (1942), 19 Cal. 2d 807, 122 P. 2d 892. The most patent illustration of this situation is where a plaintiff sues a servant for injuries

caused by the servant's alleged negligence within the scope of his employment, a judgment against the plaintiff on the grounds that the servant was not negligent can be pleaded by the master as res adjudicata if he is subsequently sued by the same plaintiff for the same injuries, notwithstanding he was not a party to the earlier suit. The California decision above cited says: "The cases justify the exception (to the mutuality rule) on the ground it would be unjust to permit one who has had his day in court to reopen identical issues by merely switching adversaries." So far as we have been able to learn this doctrine has been confined, in Indiana, to cases where several different persons may be responsible for the actions of one. Thus "If the complaining party is not bound by the judgment in one suit he may, in cases where the evidence is conflicting and reasonable men may disagree, pursue each of the persons responsible in successive suits until he finds a jury that will agree with this contention, notwithstanding one or more juries have found against him. Such a procedure is manifestly unjust." *Kavis* v. *Schimmel, supra.* See also *City of Anderson* v. *Fleming* (1903), 160 Ind. 597, 67 N. E. 443. In other types of litigation the rule requiring mutuality of estoppel, where former adjudication is urged as a defense, was reaffirmed by the Supreme Court as late as 1947 in *Tobin* v. *McClellan* (1947), 225 Ind. 335, 73 N. E. 2d 679, 75 N. E. 2d 149.

The appellants further contend that the appellee's right to quiet her title to the undivided one-half of the land in controversy and to have the same set off to her in partition is barred by the 15 year statute of limitations. Burns' 1946 Replacement, § 2-603. They assert that said cause of action accrued when Frederick Collett died on August 21, 1930, and this suit was not commenced until almost 16 years later.

It is said in 54 C. J. S., Limitation of Actions, § 124, p. 36 that: "The statute of limitations does not begin to run in favor of a defendant in an action to quiet title, or remove a cloud, so that he may invoke its running for a prescribed period as a defense, until some assertion of right or title to the premises has been made by him and until such assertion of right or title to the premises has been brought to the knowledge of plaintiff." There is no evidence in this case that Samuel Collett asserted any claim to a life estate in the appellee's half of the real estate involved until he commenced suit to quiet this title thereto on July 9, 1931, which was 14 years, 10 months and 26 days before the commencement of this action. Nor does it appear that knowledge of such claim was brought home to the appellee more than 15 years before she commenced this suit. Even if it can be said she is chargeable with knowledge thereof by the publication of notice to her of Samuel Collett's suit, such date was necessarily somewhat later and brings the commencement of the present suit well within the period of limitation.

The right of a tenant in common to sue for partition is not limited to any particular number of years after the death of the ancestor except as to one who has in the meantime been excluded from possession. 40 Am. Jur., Partition, § 29, p. 24. See also *Nutter* v. *Hawkins* (1884), 93 Ind. 260, 265. As far as the evidence in this case discloses it was not until Samuel Collett obtained a decree quieting title to a life estate in the whole of said real estate that the appellee was ousted of her right to enjoy the unincumbered fee simple title to the undivided one-half thereof. This was 14 years, 9 months and 22 days before the commencement of this action which is safely within the 15 year statute of limitations.

Finally the appellants assert that the appellee is chargeable with laches in failing to prosecute her claim for more than 15 years after her father's death. When Frederick Collett died the appellee was 11 years old and a resident of the state of Virginia. The evidence indicates that her mother knew there was "some land supposed to come through his side" (the father's) and consulted an attorney about it but nothing was done. She told the appellee of the possibility of her having an interest in some farm lands in Indiana but by reason of her age did not go into details because that would have required a disclosure of the circumstances of her marriage. The appellee became of age on July 20, 1940, and was married on March 21, 1944. She mentioned the fact to her husband that "there was some land supposed to come through my father to me from his family" but it was not until she procured an abstract of title in February, 1945, that she learned the actual situation. She filed this suit on July 5, 1946.

The appellants concede that laches on the part of the appellee's mother cannot be imputed to her and it is the general rule that laches cannot be imputed to an infant during his minority especially where he and the adverse party reside in different states and the minor has no knowledge of his rights. 30 C. J. S., Equity, § 122, p. 547. Thus it is apparent that the period from July 20, 1940, to July 5, 1946, constitutes all the lapsed time that can be charged against the appellee in considering the question of laches. There are circumstances where "the laches of a party may be of such character . . . as will bar his right to prosecute his action, in less time than that fixed by the statute of limitations. But that is only in cases where the laches are of such a character and under such circumstances as to work an equitable estoppel." *Scherer* v. *Ingerman, Administrator* (1887),

110 Ind. 428, 11 N. E. 8, 12 N. E. 304. This court said in *New Albany Nat. Bank* v. *Brown* (1916), 63 Ind. App. 391, 410, 114 N. E. 486: "Laches implies something more than a mere lapse of time; it requires some actual or presumable change of circumstances rendering it inequitable to grant relief." There is no evidence indicating that there was any substantial change in the appellants' situation which took place during the period of the appellee's alleged negligent repose. The appellants did some fertilizing, clearing and fencing but it is not clear that this was done after the appellee reached majority and became chargeable with laches. The appellants have paid the taxes since acquiring possession of the property but these and the other items above mentioned presumably were credited to them by the court in its assessment of damages.

Judgment affirmed.

NOTE.—Reported in 95 N. E. 2d 706.