PHAR-CREST LAND CORPORATION *v.* THERBER ET AL.

[No. 1268S214. Filed February 27, 1969.]

*Bamberger, Foreman, Oswald and Hahn,* of Evansville, for appellant.

*Edwin W. Johnson, John L. Carroll, Charles C. Griffith,* of Evansville, and *Johnson and Carroll,* of counsel, of Evansville, for appellees.

ARTERBURN, J.—This case comes to this Court on transfer from the Appellate Court by an order made by that court which questions the soundness of the decision in *Ross* v. *Legler* (1964), 245 Ind. 655, 199 N. E. 2d 346. See 144 Ind. App., 242 N. E. 2d 641 for opinion of Appellate Court.

Plaintiff-appellant brought an action of ejectment and to quiet title to a strip of land which the appellant's predecessors in title by deed had granted to the railroad back in 1908, and which land the railroad had ceased to use as a right-of-way. The deed was similar in character and concerned land owned by the same railroad in the same area as that involved in *Ross* v. *Legler, supra.*

The appellees (defendants below) claimed possession by grant from the railroad and filed four paragraphs of answer, to which we need give no particular concern except the third paragraph, which was based upon laches. The appellees filed a cross-complaint to quiet title, claiming they were the owners of the fee-simple title thereto. The appellees requested a jury trial. Appellant asked that the equitable issue as to laches be severed from the legal issues and tried by the court. The request was granted. The cause was then submitted to the jury for trial an the legal issues as to the title. The jury was directed to and did render a verdict for the appellants on appellee's cross-complaint. The court by instruction withdrew from the jury's consideration the appellees' answers based upon adverse possession and recorded title as defenses. The court gave to the jury at the appellant's request at the close of the evidence, an instruction to the effect that the appellant-plaintiff was the owner of the real estate in question, as shown by the recorded title. The jury, however, rendered a verdict for appellees on appellant's complaint. The court, by

special finding, found for the appellees on the third paragraph of answer and that appellant was guilty of laches and should not recover from the appellees.

It is argued that the jury should not have disregarded the court's instruction in favor of the appellant when it rendered judgment against the appellant for the appellees on plaintiff's complaint. In our opinion, that question becomes moot as a result of the trial court's finding that laches existed which nullified the right of the appellant to assert its legal record title. If the jury had found for the plaintiff and that the plaintiff had legal title, the trial court, in determining the equitable issue of whether or not laches existed and finding that it did exist, would thereupon have had to set aside the jury's verdict as a result of the court's finding.

There are many questions raised by the appellant with reference to the jury trial and alleged error committed therein. In our opinion, however, they all become moot upon the trial court's finding that the defendant had an equitable defense of laches and that the plaintiff-appellant could not have recovered, even if the jury returned a verdict in favor of the appellant upon the legal issues of the title.

What we have to say with reference to those contentions of appellant also is true of the question of whether or not the principles enunciated in *Ross* v. *Legler, supra,* should be reconsidered by this Court. The question is moot. For that reason we need not consider whether or not the plaintiff-appellant here had any reserved legal interest such as that remaining over and above the granting of an easement for a right-of-way. The defense of laches was found by the trial court to be valid against such legal interest or claim, if any existed.

The only real question here before us is whether or not the evidence was sufficient to sustain the trial court upon the

issue of laches, and in that respect we can not weigh the evidence before the trial court. We may examine it only to determine if there is any evidence to support such a finding.

"Where the sufficiency of the evidence is questioned on appeal, the Supreme or Appellate Courts do not weigh the evidence, but will merely examine the record most favorable to the appellee to determine if there is any evidence, or any legal inference which may be drawn therefrom which, if believed by the trier of facts, would sustain the verdict or decision." 2 I.L.E., *Appeals,* § 572, p. 489; *Southport Board of Zoning Appeals, et al.* v. *Southside Ready Mix Concrete, Inc. et al.* (1961), 242 Ind. 133, 176 N. E. 2d 112; *Anderson, et al.* v. *Kinser, et al.* (1961), 241 Ind. 555, 173 N. E. 2d 914.

The evidence on the issue of laches is as follows:

The railroad used the land obtained through the 1908 conveyance as a right-of-way until 1942. Shortly thereafter the railroad took up the tracks. In 1946 the land was offered for sale by the railroad to Richard Legler, the father of the present stockholders of Phar-Crest Land Corporation. He refused to buy the land. The appellees (the Therbers) then purchased the land. Therber testified in the trial court that shortly after he purchased the land in 1946 he visited Legler and informed him that he had purchased the property and tried to buy some adjoining land. One Cooksey testified for appellees and stated that appellees started working on the property in 1946 by cutting weeds and hauling in bricks to fill the swamp and ditch which ran through the land. Cooksey testified that the Therbers worked on the land once per week in 1946. In 1947, 1948 and 1949 these acts were done every two weeks. In 1959 the appellees started construction of a building on the land, which was soon completed and used as an office building with a value of $14,500.00. These acts were done with the knowledge of the elder Mr. Legler and after his death with the knowledge of his son, Theodore Legler.

The defendants-appellees paid all the real estate taxes which were assessed on the property during the years in which they occupied it. The plaintiff-appellant points out to the court that the auditor's tax receipt given to the defendants-appellees shows that the taxes were only for a right-of-way and not a fee-simple. However, during the time in question the plaintiff-appellant paid no taxes on the property. If its contention is correct that the defendants-appellees paid only the taxes on a right-of-way, the plaintiff-appellant should have been assessed taxes on the remainder interest. The auditor's description on the tax duplicate and receipts were out of the control of the defendants-appellees, and therefore is not in itself determinative. Therefore we do not think this contention is deserving of such merit as to in any way reduce the appellee-defendant's position.

It is further to be noted that upon the death of Richard Legler the property in question was excluded from his estate for estate tax purposes. While this in itself is not enough to render title in the defendants-appellees, when viewed with the other evidence of the case it supports the trial court's finding of laches on the part of the plaintiff-appellant.

It has been said that to establish laches or equitable estoppel against one asserting legal title to real property, the burden is on the party attempting to raise such issue to show actual fraudulent representation, concealment or such negligence as will amount to fraud in law and that such party was actually misled, to his injury. 19 Am. Jur., *Estoppel*, § 87, p. 743.

The evidence in this case shows that the appellees have been injured by reason of the improvements made on the property if appellant's claimed legal title prevailed. Silence when there is a duty to speak can constitute fraud, and a failure to assert one's right to real estate when his interest is challenged, to the extent that the other party assumes no claim is made thereto, can constitute fraud.

Fraud in many instances is "constructive" in that there may not be any active intentional purpose to deceive or defraud, yet the non-action or action is so prominent and misleading as to cause a party to rely thereon. In our opinion, the trial court found in this case such a situation existed.

> "As stated infra § 69a, fraud is an element of estoppel only in the sense that a fraudulent result would follow a denial of the truth of the representation, and not ■ in the sense that the representation must have been made with an intent to deceive." 31 C.J.S., *Estoppel*, § 59, p. 376.

It may be that the appellant at one time felt this property was of no value, but as the years went by and the improvements were made thereon, it acquired a value in the appellant's estimation such that it found it desirable to assert its alleged right or title thereto. In the meantime, it permitted appellees to take the risk of depreciation in value of the property and pay the taxes thereon. Equity does not countenance such a position when it damages or injures another party relying thereon.

The case of *Hutter et al.* v. *Weiss et al.* (1961), 132 Ind. App. 244, 177 N. E. 2d 339 quite comprehensively discusses the principles of laches with respect to its effect in quiet title actions and supports the conclusions we have reached above. Laches generally is referred to in the negative as a defense. It may develop to a point where it becomes the basis for a quiet title action based upon equitable principles. 74 C.J.S., *Quiet Title*, § 17a, p. 40.

> "The rule is well settled in modern law that the title to land or real estate may pass by equitable estoppel, which is effectual to take the title of land from one person ■ son and vest it in another where justice requires that such action be done." 19 Am. Jur., *Estoppel*, § 87, p. 743.

Very early in the legal history of this state the Supreme Court held that a party may quiet title based upon principles

of equity such as equitable estoppel. In *Pitcher* v. *Dove* (1884), 99 Ind. 175, 177, 178, this Court said:

"The appellee's counsel place the right to the relief sought on the ground of estoppel. Our cases hold that title may be acquired by estoppel, and, while there is much diversity of opinion upon this point, we are satisfied that they rest on a solid foundation, and are well sustained by authority [citing cases]. Our ruling is that title may be acquired by estoppel."

In that connection the court further stated:

". . . It is well settled that there need not be any design to defraud in order to constitute an estoppel. It is sufficient if the conduct of the party has been knowingly such as would make it unconscionable on his part to deny what his conduct had induced another to believe and act upon in good faith and without knowledge of the facts [citing case]." See also to the same effect: *Grantham Realty Corp.* v. *Bowers, Jr., Tr.*, (1939), 215 Ind. 672, 22 N. E. 2d 832.

It is our opinion that the finding of the trial court in regard to laches is amply supported by the evidence and should not be disturbed by us.

The only question remaining is the effect of the trial court's judgment quieting title in the appellees (defendants below) on defendants' cross-complaint. Here again we are confronted in our opinion with a technicality of no substantial merit. If we concede that this case should be sent back for retrial and the defendants be permitted to base their cross-complaint for quiet title upon the equitable ground of laches, no trial would be necessary, since that same issue of fact was litigated and determined under appellees' third paragraph of answer to plaintiff-appellant's complaint, and that same issue, having been adjudicated as between the same parties, would be binding in any new litigation over the same subject matter between the same parties on the same issues. *Bryant* v. *Owens* (1953), 232 Ind. 237, 111 N. E. 2d 804; 17 I.L.E., *Judgments*, § 331, p. 378.

Finally, it is urged that the Occupying Claimant's Act, Burns' § 3-1501, *et seq.*, is the appellees' remedy. We find no law that compels the appellees to follow such a 8. statutory remedy for reimbursement for improvements made. The appellees had the right to elect whether to stand upon the equitable principle of estoppel and laches and retain possession and title, or to accept the benefits of Burns' § 3-1501. This statute offers reimbursement where improvements have been made in situations that go beyond equitable estoppel and laches or where the facts do not support such a position, as the statute says, when improvements have been made "in good faith."

We therefore find that the trial court committed no error, and the judgment of the trial court is affirmed.

DeBruler, C.J., and Givan, J., concur.

Hunter, J., concurs with opinion.

Jackson, J., "Without departing from my dissent in *Ross* v. *Legler* (1964), 245 Ind. 655, I concur in the result of J. Arterburn's opinion."

### CONCURRING OPINION

HUNTER, J.—I concur with the majority opinion only as regards the result reached in the case at bar, and I do not believe the doctrine of laches should ordinarily be applied to an action to quiet title to realty. Laches is a judicially created defense and should not be employed in derogation of a statutory scheme established by the General Assembly. I believe that the statute of limitations, Ind. Anno. Stat. § 2-602 (1967 Repl.), and the Occupying Claimant's Statute, Ind. Anno. Stat. § 3-1501 (1968 Repl.), establish such a statutory scheme.

The statute of limitations, as applied to this case, bars the appellant from filing an action after twenty years from the accrual of the cause of action. Because of the great desirability and necessity of providing certainty to real estate

titles, this time period should be shortened only "where the laches are of such a character and under such circumstances as to work an equitable estoppel." *Scherer* v. *Ingerman* (1887), 110 Ind. 428, 433, 11 N. E. 8, rehearing denied, 12 N. E. 304; *Williams* v. *Ketcham* (1906), 37 Ind. App. 506, 77 N. E. 285; *Hegarty* v. *Curtis* (1950), 121 Ind. App. 74, 95 N. E. 2d 706. I do not believe that the actions of the appellant or its predecessors in title was of such a fraudulent character as would justify an imposition of the doctrine of equitable estoppel under ordinary circumstances. It was for this precise situation that the legislature enacted the occupying claimant's statute and thereby created a remedy for an occupant of land who under color of title and in good faith had made valuable improvements to the premises. Had the General Assembly intended that the record owner was to be precluded from quieting title or recovering possession to land in a time period shorter than the statute of limitations solely because the occupant had made valuable improvements to the land, the Occupying Claimant's statute would have so provided. Since the statute only allows the occupant to retain the "value of lasting improvements" made to the premises, it must be presumed that the General Assembly did not intend that the occupant's making of valuable improvements should constitute an equitable estoppel such as to effect a transfer of title. Rather, I believe that the doctrine of equitable estoppel should require that the conduct of the record owner must ordinarily be such as to cause the occupant to initiate some action that he would not otherwise undertake. In the case at bar, it is evident that the appellee made the improvements, not in reliance on representations or other affirmative actions of the appellant or its predecessors, but rather on a belief, albeit good faith, that he was the owner of the premises.

Were this all that is involved, I would feel compelled to dissent to the majority opinion, but there is an additional factor which in my opinion reshuffles the equities in this case. In 1951, the General Assembly shortened the applicable

statute of limitations from twenty to ten years, but the amendment provided that as to "causes of action for the recovery of the possession of real estate accrued prior to the effective date of this amendatory act (March 7, 1951), the time in which such actions shall be commenced thereon shall be the same as if this amendatory act had not become law." Ind. Anno. Stat. § 2-602 (1967 Repl.) Thus, to causes of action which accrued prior to 1951, a twenty year statute of limitations is still applicable. In the case at bar, the cause of action accrued when the appellees took possession of the premises in 1946; in this case, the twenty year statute is applicable. The suit was filed in 1964, eighteen years after the cause of action had accrued. Thus, Ind. Anno. Stat. § 2-602, *supra*, does not afford the appellees a defense against the appellant's law suit. The result is that, even though the appellee was in continuous possession of the premises for thirteen years between the amendment of the statute and the commencement of this action, and even though the statute, as amended, only requires a possession of ten years to bar this type of action, the defense created by the statute is not applicable to the appellee. As inequitable as the situation seems, had the appellee's possession commenced in 1952, instead of 1946, the present action would be barred, and the appellee would be deemed the lawful owner of the realty. It is the length rather than the brevity of the appellee's possession which allows him to be ousted from the premises.

While, under ordinary circumstances, I do not believe that the doctrine of equitable estoppel should be imposed to shorten the statute of limitations in questions involving title to real property absent affirmative conduct of a fraudulent character, I can consent to its application in the case at bar as a means to balance all the equities involved in this dispute. If the question were one of shortening the present ten year statute by imposing the doctrine of equitable estoppel, given the factual situation presented by this case, I would dissent.

NOTE.—Reported in 244 N. E. 2d 644.