Fred E. DAWSON, Phyllis A. Dawson, Cliff Garrett and Five Star Construction, Inc., Appellants (Defendants Below),

v.

ST. VINCENT HOSPITAL & HEALTH CARE CENTER, INC., Appellee (Plaintiff Below).

No. 3–181A10.

Court of Appeals of Indiana, Fourth District.

Oct. 23, 1981.

William K. Bennett, Bennett, Boehning, Poynter & Clary, Lafayette, for appellants.

William A. Hasbrook, Ruckelshaus, Roland & O'Connor, Indianapolis, for appellee.

CHIPMAN, Presiding Judge.

Defendants Fred and Phyllis Dawson, Cliff Garrett and Five Star Construction, Inc. appeal a default judgment entered against them in the Warren Circuit Court for money owed Saint Vincent's Hospital and Health Care Center, Inc. (Hospital). The trial court awarded the Hospital $8,798.63 plus $703.89 interest and $3,164.34 attorney fees.

After the default judgment was entered, all four defendants filed a motion seeking equitable relief from the judgment pursuant to Ind. Rules of Procedure, Trial Rule 60(B). Also, Garrett and Five Star Construction filed a motion to correct errors under Ind. Rules of Procedure, Trial Rule 59 on grounds the default judgment was contrary to law. The trial court denied both the T.R. 60(B) motion and the T.R. 59 motion to correct errors.

Our Court of Appeals in response to appellee's motion to dismiss the Dawsons' appeal for failure to file a motion to correct errors, ruled that because the T.R. 60(B) motion had been filed within 60 days from judgment, no further motion to correct errors was required.

On appeal the defendants contend the default judgment should have been set aside by the trial court because an inadvertent mistake had prevented a timely defense, and the assessment of interest and attorney fees was contrary to law. Moreover, Garrett and Five Star Construction contend the judgment against them was contrary to law because their oral agreement with the hospital was unenforceable under the statute of frauds, and it was also contrary to law to assess attorney fees against them.

We affirm in part and reverse in part.

I.   Issues

The parties state the issues thus:

"[W]hether or not the Trial Court committed reversible error in over ruling the Motion for Relief from Judgment and the motion to correct errors of the Defendants herein, and thereby refusing to set aside the Default Judgment theretofore entered by the Court and permit the Defendants to appear and defend the action."

We do not find that statement of the issues to be particularly helpful. A review of the argument section of the appellants' brief and the motion to correct errors indicates that only the following issues have been preserved for review:

1) Was an employer's oral promise to a hospital that he or his company would pay the bill of an employee's wife an unenforceable promise under the Statute of Frauds?

2) Was it error for the trial court to assess attorney's fees absent an agreement or statute authorizing assessment of fees against the defendants?

On the basis of the defendants' motion for relief from judgment pursuant to T.R. 60(B), the briefs also address the question of whether the trial court abused its discretion in denying equitable relief to the defendants who, because of a series of mistakes, failed to defend the action against them. We note, in this regard, the defendants have not appealed the denial of their T.R. 60(B) motion pursuant to the proce-

dure suggested in T.R. 60(C) but rather rely on the language of *In Re Marriage óf Robbins*, (1976) 171 Ind.App. 509, 358 N.E.2d 153 at 155, 156:

"The time limits for each of these motions, TR. 59 and TR. 60(B), have inherent basic purposes. One of the common, overlapping purposes is to call errors, either in equity or in law, to the attention of the trial court to avoid an injustice. To this extent, both motions overlap in their basic purpose. TR. 59(A)(7) states that its purpose shall be for the 'Correction of a judgment subject to correction, alteration, amendment or modification; or'; and this purpose is supplemented by a more inclusive purpose: '(9) For any reason allowed by these rules, statutes or other law.' This last purpose, TR. 59(A)(9), would appear to encompass the additional equitable purposes stated in TR. 60(B) during the TR. 59 sixty day time limit. Therefore, a TR. 60 purpose stated in a motion, regardless of its denomination, should be treated as a TR. 59 motion if it is filed within the sixty day period after judgment. No further motion to correct errors is required for an appeal. After the sixty days, a motion, regardless of its denomination, which states a TR. 60 purpose must be treated as a TR. 60 motion. When the trial court renders a judgment by denying or granting this motion, a motion to correct errors is required for an appeal from the judgment."

Because the language of the Robbins case is not in harmony with the language of the Ind. Rules of Procedure, Appellate Rule 2(A), 7.2(A)(1)(a) and T.R. 60(C), we believe it is appropriate to address the question of jurisdiction.

## II. Facts

Phyllis Dawson was hospitalized March 21, 1979, through April 6, 1979, at Saint Vincent Hospital in Indianapolis. The bill came to $8,798.63. Upon Mrs. Dawson's admission, she and her husband signed an agreement guaranteeing payment of the bill, as follows:

"In consideration of the acceptance by the hospital of the above named patient and of the services to be rendered him/her, the undersigned guarantees payment of the account of such patient, and agrees to pay the same if not paid by the patient at the time of discharge from the hospital. The hospital does not charge interest; the cost of credit is prorated in the prices of the rooms and services. If the amounts due St. Vincent Hospital and Health Care Center for services rendered become delinquent and the dept (sic) is assigned to a third-party for collection, it is understood that a service charge not to exceed $5.00 may be added, and that this service charge could be in addition to any court costs and attorney's fees that may be added."

In addition, the hospital telephoned Fred Dawson's employer, Cliff Garrett, Vice President of Five Star Construction, Inc. The hospital contends Garrett orally assumed financial liability up to $25,000 for Mrs. Dawson's hospitalization.

The debt was not paid and on March 14, 1980, the hospital sued the defendants. The summons and complaint were served but never answered. On May 1, 1980, the court entered a default judgment. Sixty days later, on June 30, 1980, counsel for the defendants filed a motion for relief of judgment on behalf of all four defendants and a motion to correct errors on behalf of Garrett and Five Star Construction. The motions were denied by the trial court on October 14, 1980.

## III. Statute of Frauds

Garrett and Five Star Construction contend the default judgment against them was contrary to law because the oral promise made by Garrett was not actionable under the Statute of Frauds, Ind.Code 32–2–1–1.[1]

---

1. Ind.Code 32–2–1–1 "When contracts must be in writing.—No action shall be brought in any of the following cases:

First. To charge an executor or administrator, upon any special promise, to answer damages out of his own estate; or,

At the outset, we note the Statute of Frauds is an affirmative defense. T.R. 8(C). To properly preserve an affirmative defense, the party with the burden of proving the defense (in this case, Garrett and Five Star Construction) must either have set forth the defense in a responsive pleading or have litigated it by consent of the parties. *Lawshe v. Glen Park Lumber Company, Inc.*, (1978) Ind.App., 375 N.E.2d 275 at 277–78. T.R. 15(B). Garrett and Five Star failed entirely to answer the claimants' action. Not until their motion to correct errors did Garrett and Five Star raise the Statute of Frauds. Since this defense was neither raised affirmatively in an answer nor tried by implied consent, Garrett and Five Star have waived the error for purposes of review. *American Underwriters, Inc. v. Curtis*, (1979) Ind.App., 392 N.E.2d 516.

The possibility the party has a defense will not in itself upset a default judgment. It highlights only the party's error, not the trial court's.

## IV. Attorney Fees

The general rule in Indiana is that each party to the litigation must pay its own counsel fees. They are not allowable in the absence of a statute, or in the absence of some agreement or stipulation specially authorizing the allowance, and the rule applies equally in courts of law and in courts of equity. *Trotchy v. Van Sickle*, (1949) 227 Ind. 441, 85 N.E.2d 638; *Saint Joseph's College v. Morrison, Inc.*, (1973) 158 Ind.App. 272, 302 N.E.2d 865. It is only a general rule because the courts have recognized exceptions in equity. See *Cox v. Ubik*, (1981) Ind.App., 424 N.E.2d 127; *Umbreit v. Chester B. Stem, Inc.*, (1978) Ind. App., 373 N.E.2d 1116. In this case, where no equitable exceptions or statutes apply, the only question is whether Garrett's oral promise stipulated a special authorization for attorney fees.

This is a question of fact for the trial court to determine and its determination will not be disturbed on appeal if it is supported by sufficient evidence. *Phar-Crest Land Corp. v. Therber*, (1969) 251 Ind. 674, 244 N.E.2d 644; *Honey Creek Corp. v. WNC Development Co.*, (1975) 165 Ind.App. 141, 331 N.E.2d 452. However, the only evidence in the record before us of the terms of the oral agreement is the affidavit of the Hospital's credit manager, Arthur Patrick. Paragraph Five states:

"That at the time of Phyllis A. Dawson's admission, Cliff Garrett, on his own behalf and on behalf of Five Star Construction, Inc., represented to St. Vincent Hospital that one hundred percent (100%) of Phyllis A. Dawson's room and ancillary charges up to $25,000 would be paid either by Cliff Garrett or Five Star Construction, Inc."

Patrick's description of the agreement does not provide for attorney fees. It states only that Garrett agreed to pay Mrs. Dawson's room and ancillary charges. Attorney fees are the expense of litigation, they are not charges ancillary to medical services. We see nothing in Patrick's description of the agreement which indicates the trial court could find Garrett agreed to pay anything but hospital charges. Accordingly, we find the trial court order requir-

Second. To charge any person, upon any special promise, to answer for the debt, default or miscarriage of another; or,

Third. To charge any person upon any agreement or promise made in consideration of marriage; or,

Fourth. Upon any contract for the sale of lands; or,

Fifth. Upon any agreement that is not to be performed within one [1] year from the making thereof; or

Sixth. Upon an agreement, promise, contract or warranty of cure relating to medical care or treatment; Provided, however, That nothing in this subsection affects the right to sue for malpractice or negligence.

Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three [3] years. [1 R.S. 1852, ch. 42, § 1, p. 299; 1975, P.L. 298, § 1.]"

ing Garrett and Five Star to pay the hospital's attorney fees in error.[2]

### V. Relief from Judgment

■ Although only Garrett and Five Star filed a motion to correct errors, all four defendants filed a motion for relief from judgment pursuant to T.R. 55(C) and T.R. 60(B).[3] The motion was based on the peculiar set of circumstances which developed when Garrett erroneously assumed he had employed counsel to enter an appearance on behalf of all the defendants. The motion indicates he phoned his lawyer and delivered the summons and complaint to his office, but because of a misunderstanding, the attorney did not enter an appearance. Six weeks later, when the cause came to trial, none of the defendants were in court and the hospital properly moved for and was granted default judgment.

The defendants urged the trial court to set aside the default because of the mix-up in employing an attorney. The court, after a hearing, denied the motion. The Dawsons now want to appeal that denial of their T.R. 60(B) motion although they have not filed a motion to correct errors.

In Indiana, the proper method for appealing the denial of a T.R. 60(B) motion is not entirely settled. Although T.R. 60(C) provides "an appeal may be taken therefrom as in the case of a judgment," which generally requires a prerequisite motion to correct errors, the Third District has noted an exception when a T.R. 60(B) motion is filed within 60 days after default judgment. Under those circumstances, "[n]o further motion to correct errors is required for an appeal." *In Re Marriage of Robbins, supra.* The idea, apparently, is that T.R. 59(A)(9) encompasses the equitable purposes stated in T.R. 60(B). Therefore, a statement of T.R. 60(B) purposes in any motion seeking

relief is the equivalent of a T.R. 59 motion to correct errors if made within the time limits of T.R. 59 and should be sufficient to establish jurisdiction for the Court of Appeals.

The argument is fetching but faulty. An underlying premise is that T.R. 59 and T.R. 60(B) motions both propose to call appealable errors to the attention of the trial court, so that in effect a T.R. 60(B) motion filed within 60 days of judgment is merely the functional equivalent of a motion to correct errors.

However, under most circumstances, defaulted parties invoke the equity powers of the trial court because there was no appealable error. "The defaulted party seeking relief in such instance presents facts to the trial court explaining the failure to appear or plead and in essence asks the court to forgive the failure." *Kelly v. Bank of Reynolds,* (1976) 171 Ind.App. 515, 358 N.E.2d 146. The party generally does not claim the trial court erroneously entered the default judgment but only that under the circumstances now presented it would be inequitable to deny relief.

The first opportunity for error or inequity by the court therefore is when the motion for relief is denied. It is then that the party may have reason to complain, to allege error by the trial court and to seek correction of that error.

■ It is entirely conceivable a T.R. 60(B) motion filed within 60 days of judgment may have the taste and scent of a T.R. 59 motion to correct errors. That was the situation in *Robbins*, where the motion nicely functioned as a motion to correct errors by accomplishing all the purposes of a T.R. 59 motion.[4] *In P–M Gas & Wash*

---

**2.** If the plaintiff had been entitled to attorney fees the requirements outlined in *U. S. Aircraft Financing, Inc. v. Jankovich*, (1980) Ind.App., 407 N.E.2d 287 (trans. denied), should be followed.

**3.** A default judgment may be attacked either by a motion to correct errors or a motion for relief from judgment. *Protective Insurance Co. v. Steuber,* (1977) Ind.App., 370 N.E.2d 406.

**4.** Edley Robbins' motion which raised T.R. 60(B) grounds was even entitled a Motion to Correct Errors. It reads in pertinent part as follows:

"Comes now EDLEY A. ROBBINS and moves the Court to Correct Errors and grant a new trial herein for the following reasons, to-wit:

"1. Denial of a fair trial by irregularities in the proceedings of the Court herein.

Company, Inc. v. Smith, (1978) 268 Ind. 297 at 301, 375 N.E.2d 592 at 594, our Supreme Court listed those purposes as: 1) to present to the trial court an opportunity to correct errors which occur prior to filing of the motion, 2) to develop those points which will be raised on appeal by counsel and 3) to inform the opposing party concerning the points which will be raised on appeal so as to provide that party an opportunity to respond in the trial court and on appeal. If a T.R. 60(B) motion does all that, then it is, regardless of what name it uses, a motion to correct errors. However, if the motion merely seeks equitable relief without citing errors by the court, there is nothing for an appeal. The mere fact that discretionary equitable relief has been denied, without more, alerts no one—neither the trial court, counsel, nor the Court of Appeals—to the alleged errors intended to be raised on appeal.

■ Unlike the *Robbins* case, where the motion in question was clearly adequate to serve as a motion to correct errors, the motion in the case at hand raises no errors and develops no appealable issues. A T.R. 60(B) filed within 60 days of a default judgment is not automatically a motion to correct errors.

The motion in this case, although filed within 60 days, is entirely a plea for equity. Attempts at transubstantiation merely puts us in the awkward position of attempting to short circuit the trial court's procedure for correcting its own errors and to invent the appellant's grounds for appeal. If there was error in denying the defendants' motion for relief from judgment, the proper and logical procedure for raising the issue for appeal would have been to point out that error and seek correction via T.R. 59.

■ Because no motion to correct errors has been filed in form or in substance on

the issue of the denial of equitable relief, we find no error has been presented to us on appeal and we are without jurisdiction to fish for error.

## VI.  Conclusion

We find the trial court erred in assessing attorney fees against Garrett and Five Star Construction. In all other respects we affirm the trial court's default judgment and assessment of damages.

For the reasons stated above, this cause is affirmed in part, reversed in part, and remanded to the trial court for proceedings consistent with this opinion.

MILLER and YOUNG, JJ., concur.

"2.  In the abuse of discretion of the Court herein, in that:
a) Relying upon the telephone calls as attorney for Edley A. Robbins, that he had with the secretary for the Court and as the attorney for Jean Robbins, that although this matter was set for disposition, that he would be out of town on said date and that parties were seeking to work out a settlement of the differences between them and that the matter would be continued, all as disclosed by the Verified Motion to Vacate the Judgment herein."