### BOSTON v. DODGE.

*A.* entered on *U. S.* land without any claim of right and made improvements. *B.* afterwards purchased the land of the *U. S.*, and promised *A.* to pay him 80 dollars for the improvement. In consequence of the promise *A.* left the premises: *Held*, that this promise was *nudum pactum*, upon which no action could be supported.

ERROR to the *Clark* Circuit Court.—This was an action of assumpsit for work and labour. Plea, the general issue. The evidence at the trial was, that the plaintiff had made an improvement on a tract of land, the property of the *United States*, which land the defendant afterwards purchased of the government; that the plaintiff was in possession and claimed from the defendant a compensation for the improvement he had made; and that the defendant promised to pay him for the same the sum of 80 dollars, in consequence of which the plaintiff left the premises. To this evidence the defendant demurred, and the plaintiff joined in demurrer.—Judgment by the Circuit Court in favour of the defendant.

*Tuesday, May* 19.

SCOTT, J.—The case, as it is now before us, is suspended on the solution of this single question, was the promise of *Dodge* such an undertaking as would, agreeably to the rules of law, support an action of assumpsit? To answer this question correctly, it is necessary to enquire into the consideration for which the promise was made. The work and labour done and performed on the land, is set out by the plaintiff as the consideration of this promise, and he alleges that in consequence of the improvement, the land was rendered more valuable, and therefore as the defendant enjoyed the benefit, he ought to pay for the labour. Had the improvement been made at the instance and request of the defendant after he purchased the land, this position would no doubt be correct, but the fact in evidence is otherwise. The improvement was made while the land remained public property. The *United States* had the land for sale, and it will not be denied, that they had a right to sell it, with whatever improvement was on it, and to put the purchaser in possession, without obtaining the consent of *Boston*, or making him a-

ny remuneration for his improvement. *Dodge* purchased the land of the *United States*, and not of *Boston*: he purchased it in the situation in which it was at the date of the entry: he paid for the land and all the profits and appurtenances thereunto belonging.· If the improvement was a benefit to any ·owner, it was to the *United States*, who were the owners at the time the improvement was made. But it is contended, that *Dodge* made a contract with *Boston* for possession of the premises, and is bound to pay agreeably to his promise. The insufficiency of this position is plain from this consideration; *Dodge* was entitled to possession from the moment he became a purchaser, and *Boston* could have no legal claim against him, for giving up that which was the property of *Dodge*. *Boston* had no estate to dispose of. Had he previously to the sale, obtained possession by a permit, under the law of the *United States*, he could have been considered as no more than a tenant at will; and of course, as the sale determined that estate, he would in that case have been bound to give up the possession to the purchaser: and if *Dodge* had promised him any thing for possession, the promise would not have supported an action. But there was no attempt made to prove that *Boston* ever pretended to hold possession under a permit. He had nothing but a tortious possession which he was at all times bound, both by the rules of law and common honesty, to yield up to the lawful owner; and if the owner under such circumstances promised to pay him any thing, it was to all intents and purposes, *nudum pactum unde non oritur actio* (1).

*Per Curiam*.—The judgment is affirmed, with costs.

*Moore*, for the plaintiff.

*Dewey*, for the defendant. .

(1) In *N. Y.* there is an adjudged case very similar to that in the text. *A.* knowingly entered on the land of *B.* without his knowledge, and made improvements, for which *B.* afterwards promised *A.* he would pay him. In assumpsit upon this promise, the Court held, that as the consideration was *past*, and as no moral obligation was shown, nor any request expressed or implied, the promise was *nudum pactum*; that the improvements made by the plaintiff were at his peril, and to consider them as meritorious services, would be to encourage depredations on private property. *Frear* v. *Hardenbergh*, 5 Johns. Rep. 272.

In cases of *past and executed* considerations for express promises, the general rule is, that the declaration must aver the services to have been rendered upon the *request* of the defendant. *Hunt* v. *Bate*, Dyer, 272, b.—*Lampleigh* v. *Braithwaite*, Hob. 105.-*Osborne* v. *Rogers*, 1 Will. Saund. 264, note 1.-1 Chitt.

Plead. 297. In evidence, the request is often *implied* from the beneficial nature of the consideration, and the circumstances of the transaction. 1 Will. Saund. supra. 1 Chitt. Plead. supra. *Livingston* v. *Rogers*, 1 Caines' Rep. 583.

Where a man is under a *moral obligation* to pay a debt, or perform a duty, an express promise to perform that duty, or pay that debt, will be supported by the previous moral obligation; per *Gibbs*, J., in *Lee* v. *Muggeridge*, 5 Taunt. 37. Thus, in cases of *antecedent debts voidable in law*, as a promise to pay a debt barred by the statute of limitations, *Hyleing* v. *Hastings*, 1 Ld. Raym. 389; a promise, by a bankrupt or insolvent, to pay an antecedent debt, *Trueman* v. *Fenton*, Cowp. 544.—*Scouton* v. *Eislord*, 7 Johns. Rep. 36; a promise by a person of full age, to pay a debt contracted during infancy, *Southerton* v. *Whitlock*, 1 Strange, 690.—*Borthwick* v. *Carruthers*, 1 T. R. 648. In these cases the plaintiff declares upon the original cause of action. *Leaper* v. *Tatton*, 16 East, 420.—*Shippey* v. *Henderson*, 14 Johns. Rep. 178. There are also cases of prior debts *due in conscience*, where an express promise is binding, though *no antecedent legal obligation*, ever existed:- as where money was lent at usurious interest, and therefore not recoverable by the *English* law, a subsequent promise to pay the principal and legal interest, has been held valid. *Barnes* v. *Hedley*, 2 Taunt. 184. S. C 1 Campb. Rep. 157, and note.-*Preston* v. *Jackson*, 2 Stark. Rep. 237. S. P. in *N. Y. Early* v. *Mahon*, 19 Johns. Rep. 147; and in Sup. Court *U. S.*, *De Wolf* v. *Johnson*, et al., 10 Wheat. 367. So, where a *feme covert* gave her bond for money advanced at her request, which bond, by law, was *absolutely void*, and after her husband's death promised payment, the promise was considered binding. *Lee* v. *Muggeridge*, supra. But a mere *moral obligation* has never been adjudged sufficient to raise an *implied* promise in law. *Atkins* v. *Banwell*, 2 East, 505.

Vide *Wennall* v. *Adney*, 3 Bos. and Pull. 247, note a.—*Edwards* v. *Davis*, 16 Johns. Rep. 281, note a.