Graham *v*. The Connersville and New Castle Junction Railroad Company.

———————•———————

GRAHAM *v*. THE CONNERSVILLE AND NEW CASTLE JUNCTION
RAILROAD COMPANY.

| 36 | 463 |
|---|---|
| 169 | 143 |
| 169 | 144 |
| e169 | 145 |

RAILROAD.— *Trespass to Land.—Appropriation.*—Where a railroad company has, without the consent of the owner and without color of title, entered upon land and occupied the same, building a depot and hotel thereon, and afterward seeks to appropriate the land under the authority of law, the value of the land at the time of the legal appropriation, with the improvement thereon, constitutes the amount for which the company is liable to the owner of the land.

APPEAL from the Wayne Common Pleas.

DOWNEY, J.—This was a proceeding to condemn and appropriate certain real estate of Graham to the use of the railroad company, instituted in the common pleas. The instrument of appropriation was filed in the clerk's office on the 3d day of June, 1867, and required the appellant to take notice that the railroad company had thereupon appropriated and then filed in the office of said clerk their instrument of appropriation of the following lots in Cambridge City, Wayne county, Indiana, to wit: lots 14, 15, 16, in block 17, west of the river, and south of the road, for the use of

the railroad for tracks, road bed, depot buildings, and other purposes connected with said railroad. Appraisers were thereupon appointed by the judge of said court, after publication of notice to the appellant, who was a non-resident of the State.

The appraisers reported, that on the 25th day of July, 1867, they made the appraisement, giving for lot 16, seventy-five dollars, for lot 15, fifty dollars, and for lot 14, forty dollars, being the damages to the appellant from the appropriation of said lots. They state that they "estimated the damages at the time the lots were occupied, about two years ago, by said company, and exclude any improvements since made by said company or other companies."

The appellant excepted to the award on the grounds, first, that the award was largely and grossly below the value of said lots at the time said commissioners estimated said damages, two years ago.

Second. The commissioners wrongfully and illegally estimated the damages accruing by reason of said appropriation at the time said company first took possession of said lots, to wit, two years ago, and not at the time said lots were legally appropriated by said company, to wit, at the time of the filing of said instrument of appropriation herein, in May, 1867, and the appraisement this day made, at which time only said appropriation was legally made.

Third. Said commissioners wrongfully and illegally excluded from their consideration the value of the improvements situated on said lots at the time said company commenced to legally appropriate the same, to wit, in May, 1867, which improvements are of the value of at least two thousand dollars, and said lots and improvements were at said time of the fair value of three thousand dollars.

Fourth. That the manner of appointment of said commissioners herein is illegal and wrongful, in this: that it directs said commissioners to estimate said damages at the time of the actual appropriation of said lots, which actual appropriation said commissioners contend is equivalent to

actual occupation or possession of said lots by said company over two years ago.

Fifth. That said commissioners illegally and wrongfully excluded from their consideration the increased value of said lots arising from the construction of said company's road into said town.

Sixth. That on the — day of May, 1867, said company filed their instrument of appropriation of said lots in the Wayne Common Pleas Court; that on the 13th day of July, 1867, said commissioners herein were by warrant of appointment to appraise the damages accruing by the appropriation made by said company, and that on the 25th day of July, 1867, said commissioners made their award in the premises, the amount of which said award has not been paid or tendered; that prior to the filing of said instrument of appropriation and the award thereafter made, and the payment of said award, which accrued at the time aforesaid, said company had no right or title, or color of title, to said lots; but the same were, until legally appropriated, the property of said Graham; yet said commissioners illegally fixed the damages arising from said appropriation, at the time, to wit, several years ago, when said company illegally took possession of said lots, and before they in any way sought to condemn said lots to the use of said company.

Seventh. That said lots when condemned and appropriated by said company were of the value of at least two thousand five hundred dollars; but said commissioners refused to estimate said damages at the time of said condemnation, and wrongfully estimated such damages at a time several years before such condemnation and appropriation. Wherefore he asked that said award be set aside, and for such further orders and proceedings in the premises as right and justice require.

Upon a general denial of these exceptions there was a trial by the court, which resulted in the following special finding: "The court having heard and duly considered the

evidence, and seen and examined the papers in the cause, finds that in the spring of 1866, the defendant, George Graham, was the owner in fee simple of lots 14, 15, and 16, in block 17, west of the river, and south of the national road, in Cambridge City, Wayne county, Indiana; that said Graham had for the last forty years been a resident of Cincinnati, Ohio; that at said time there was upon said lots an embankment or road bed constructed by some railroad company, the name of which was not proven to the court, and that at the time aforesaid said plaintiff took possession of said embankment or road bed, and laid its track thereon; that said track ran diagonally through said lots from the north-west to the south-east; that in the fall following, that portion of said lots lying north of said track, and fronting north to the Columbus and Indianapolis Central Railway was taken possession of by said plaintiff, and a depot and other buildings built thereon, and that said company is now in the possession thereof; that said defendant never gave his consent to the occupation or appropriation of said lots, and that said company took possession of and appropriated said lots without the knowledge or consent of said defendant; that said lots were worth, at the time they were taken possession of by said company, exclusive of any improvements afterward put upon them by said company, the sum of one hundred dollars.

"It is therefore considered and adjudged by the court that said plaintiff do pay into court, for the use of said defendant, the said sum of one hundred dollars, and that when the said sum is so paid, by the said plaintiff, the title to said lots, numbers 14, 15, and 16, in block 17, west of the river and south of the national road, in Cambridge City, Wayne county, Indiana, shall vest in the said Connersville and New Castle Junction Railroad Company." Judgment for costs in favor of Graham. There was an exception to the special finding by Graham. He also moved the court for a new trial, for the following reasons: First, the finding of the court on the facts is contrary to the evidence; second, the conclusions of

Graham *v.* The Connersville and New Castle Junction Railroad Company.

law drawn by the court from the facts found are contrary to law; third, error of the court in excluding answers to the questions numbered one to twelve, asked of Graham, Raymond and Markle; fourth, in refusing to allow the damages for the lots in controversy to be assessed for the value of the same at the time of the trial, no compensation having been previously paid or tendered; fifth, error of the court in compelling said Graham to accept as the measure of his damages the value of the lots in controversy at the time said company illegally and wrongfully entered into possession of the same, in opposition to the will of said Graham, and several years before said company instituted any proceeding to appropriate the same; sixth, error of the court in the instruction given to the commissioners to assess the damages at the time the plaintiff took actual possession of the lots in controversy, instead of assessing the same at the time of assessment made. This motion was overruled, and to this ruling the defendant excepted. The evidence given on the trial is set out in a bill of exceptions in the record.

The errors assigned are: first, the giving of improper instructions to the appraisers; second, the improper assessment of the damages at the time the company wrongfully took possession of the lots, instead of at the time of the legal proceedings for the appropriation of the property; third, in excluding the value of the improvements on the lots, at the time of the legal appropriation, in estimating the damages; fourth, in excluding evidence offered; fifth, in overruling the defendant's motion for a new trial.

By the evidence excluded the defendant sought to prove the damages with reference to the value of the property at the time the company took legal steps to appropriate the same, June 3d, 1867, by showing the value of the lots at that time, and also by showing the value of the lots and the improvements put on them by the company, consisting of a depot building, hotel, etc., at that date. This the court refused to allow. The answers to two or three questions will settle all the points of difference between the parties.

First.   To what point of time should the inquiry with reference to the amount of damages relate? to the time when the company took possession of the lots, or to the time when the proceeding was legally commenced to condemn and appropriate the lots or the use of them?

Second.   If the inquiry should relate to the time when the proceeding to appropriate the property was commenced, should the value of the improvements which the company had previously to that time put on the lots be included in estimating the damages?

Upon the first point we are clearly of the opinion that the inquiry should relate to the time when the company proceeded to appropriate the lots or the use of them, and not to the time when the company, without right or legal authority, took possession of them.   It may be conceded that a railroad corporation has the right, without a previous assessment of damages, to enter upon lands belonging to another person, and make surveys with a view to a location of its road; but it cannot be that such a company can legally go upon the lands of another and take and hold possession thereof, and construct its road and erect buildings thereon, without first having acquired the right to do so by grant, or by having the value thereof assessed and paying or tendering the amount of the assessment.   Such illegal acts of going upon and holding possession of the land, and constructing its road, and erecting buildings thereon cannot change or impair the rights of the land-owner.   It is contended that the defendant should have proceeded against the company to recover his damages immediately when the company took possession of the lots.   We know of no rule of law which required him to do so.   It was the plain duty of the company, if she could not otherwise acquire the right, to proceed to acquire the same by legal appropriation, before taking possession of the lots.   Constitution of Indiana, art. 1, sec. 21; 1 G. & H. 509, sec. 25; *Graham* v. *The Columbus, etc., Railway Co.*, 27 Ind. 260.   The position that the company may first take possession of the real estate of another per-

son, and afterwards make that taking legal and rightful by
having the damages assessed with reference to the time when
the possession was taken, has no warrant in the constitution
or laws of this State, whatever may have been the case un-
der the first constitution, or whatever may be the rule in other
states of the Union, where the exercise of the right of emi-
nent domain is not restricted as it is in Indiana. With us it
is plainly provided in the fundamental law, that "no man's
property shall be taken, by law, without just compensation;
nor, except in case of the State, without such compensation
first assessed and tendered."

Having thus found that the railroad company took and
has held the possession of the land without right, the next
question is, who was the owner of the improvements made
on the real estate while it was thus unlawfully held, and
should they have been included in estimating the value of
the lands in making the assessment? Where one without
right or authority, and in his own wrong, makes improve-
ments on the lands of another, to whom do the improve-
ments belong?

It is a maxim of law of great antiquity, that whatever is
fixed to the realty is thereby made a part of the realty to
which it adheres, and partakes of all its incidents and prop-
erties. By the mere act of annexation, a personal chattel
immediately becomes part and parcel of the freehold itself.
Amos and Ferard on Fixtures, 9, and cases cited. The law
with reference to the right to remove fixtures under certain
circumstances constitutes an exception to this general rule.
*Id.* 10; Hill on Fixtures, sec. 45.

One who, without license or right, and in his own wrong,
has erected a building upon the lands of another, has no right
to remove the same. *Washburn* v. *Sproat,* 16 Mass. 449.

Our statute with reference to the rights of occupying
claimants so far modifies the ancient rule, that when an oc-
cupant of land has color of title thereto, and in good faith
has made valuable improvements thereon, and is afterwards,
in the proper action, found not to be the rightful owner there-

of, he may be compensated for his improvements. But this is allowed only in those cases where the party making the improvements had color of title, and made the improvements in good faith. 2 G. & H. 285, sec. 615.

But this right has no foundation ·in the common law, and is wholly of statutory origin. *Chesround* v. *Cunningham,* 3 Blackf. 82. But for this statute, one who had in good faith made improvements on the lands of another under the belief that he was himself the owner of it, must loose the improvement, on a recovery from him of the land.

These principles applied to the case under consideration bring us, inevitably, to the conclusion, that if the railroad company, without having acquired the right to occupy the lands in question, in its own wrong erected buildings, etc., on the same, they were the property of Graham, and should have been included in estimating the value of the lands when the damages were assessed.

If this rule seems to savor of hardship, the company has no one to blame but itself, for not having avoided its application.

The judgment is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.

*W. S. Ballenger,* for appellant.

*J. B. Julian, J. F. Julian,* and *G. A. Johnson,* for appellee.