HUTTER ET AL. *v.* WEISS ET AL.

[No. 19,133. Filed October 3, 1961.]

*Fraser & Isham, William S. Isham, James A. Gardner,* all of Fowler, and *Emmet M. LaRue,* of Rensselaer, for appellants.

*Louis A. Reidelbach,* of Winamac, *Robert E. Million,* of Monticello, *James Chester,* of Valparaiso, and *F. L. Wiltrout,* of Elkhart, for appellees.

PFAFF, C. J.—This action was brought by appellees against appellants to quiet title to a 33 acre tract of land situated in Jasper County, Indiana, alleging that they are the owners thereof in fee simple. Appellants filed their counter-claim alleging that they are the owners in fee simple of said real estate and asking that their title be quieted. Various paragraphs of answer were filed, including answers of admission and denial under Rule 1-3. Under such rule answers are defenses, either legal or equitable, and may be given in evidence in quiet title actions. *Sawyer* v. *Kleine* (1948), 118 Ind. App. 616, 82 N. E. 2d 533.

There was a special finding of fact made by the court and, upon the facts so found, the court stated the following conclusions of law thereon: (1) That the law is with the appellees; (2) that the appellees are the legal and equitable owners of the real estate; (3) that the appellants are estopped from asserting or claiming any right, title or interest in and to the real estate; and (4) that the appellants are guilty of laches.

Judgment was accordingly rendered in favor of appellees on their complaint; their title to the real estate in question was quieted; and judgment was rendered against the appellants on their cross-complaint.

The questions presented by appellants are whether the decision is sustained by sufficient evidence; whether it is contrary to law; and whether the court erred in its conclusions of law.

The court found that George A. Ruths, father of the appellants, acquired title to the real estate in controversy on March 16, 1925, by Warranty Deed. Mr. Ruths died intestate on April 4, 1930, in Cook County, Illinois, and left surviving him as sole and only heirs-at-law two daughters, the appellants herein. One Battista Lama was, at the request of the appellants, appointed administrator of the estate of George A. Ruths by the Probate Court of Cook County, Illinois. The real estate in question was listed there as an asset of the estate. The court further found that Battista Lama, as administrator, "authorized" one Jake L. Eggleston to sell the real estate in controversy; that all transactions relating to the sale by Jake L. Eggelston were made by Lama as administrator and not by appellants; that no power of attorney was ever given Eggleston authorizing him to enter into a contract to sell the real estate.

On March 30, 1933, a contract was prepared reciting that appellants contracted to sell the real estate to Clarence Van Der Wey and Henry Van Der Wey. The signatures on the contract were those of appellants by Jake L. Eggleston, Agent. By the terms of this instrument the purchasers were to make payments totaling $500.00 and to assume the School Fund mortgage of $750.00. The Van Der Weys executed four promissory notes payable to Jake Eggleston for a total of $500.00, representing installments of the purchase money to be

paid. These notes were fully paid on or before December 29, 1938, and one bears an endorsement: "Received payment on the within note July 15, 1933, of $100.00. Marguerette Orwall."

Battista Lama, as administrator of the estate of George A. Ruths, deceased, executed a warranty deed of said real estate to the Van Der Weys on May 8, 1933, which deed was duly recorded on September 20, 1933, in the office of the Recorder of Jasper County, Indiana. Neither the Jasper Circuit Court nor any other court in Indiana at any time entertained any proceeding by Battista Lama, as administrator of the estate of George A. Ruths, to sell the real estate or to authorize or approve the conveyance thereof, and no reference was made to the sale in Lama's final report as administrator.

Immediately after the execution of the contract, the Van Der Weys entered into complete possession of the real estate, rented it, exercised full, complete and undisputed dominion thereof and erected a dwelling house thereon. They paid all taxes and special assessments until December 29, 1938, when they sold it to Charles R. Weiss, father of appellees, for $2,000.00, subject to the School Fund mortgage of $750.00. Charles R. Weiss paid the purchase price in full and received a deed from the Van Der Weys which was recorded, and later a corrected deed was executed by reason of an erroneous description in the first deed. Weiss had no actual knowledge or information that appellants were claiming or asserting any right, title or interest in the real estate and paid full value for it. Weiss immediately took full and complete possession, paid drainage assessments and taxes, made lasting and valuable improvements, collected the rents, and until his death on December 29, 1942, exercised full and complete dominion. The

improvements were made in good faith, without knowledge of any claim by appellants.

Charles R. Weiss left as his sole and only heirs-at-law his widow and the appellees herein. The widow, on October 25, 1945, executed her warranty deed to appellees for her interest in said real estate. Ever since the death of Charles R. Weiss, the widow and appellees have had full and complete possession of the real estate, have exercised full and complete rights of ownership and dominion, made valuable and lasting improvements, rented the same, paid taxes, ditch assessments and the School Fund mortgage of $750.00. The expenditures of Charles R. Weiss and his heirs totaled $2,934.62. At the time of the death of George A. Ruths in 1930, the value of the real estate was approximately $60.00 per acre and at the time of the trial $200.00 per acre.

Appellants in their original brief attack four of the special findings as not sustained by sufficient evidence and therefore contrary to law. However, in their reply brief they admit that there was either a stipulation or evidence to support each of these findings as made, and we need not further notice this contention. It is apparent that appellants do not now challenge the facts as found but only the meaning to be ascribed to such facts. We, therefore, proceed to examine appellants' contentions that the court erred in its conclusions of law.

When error was assigned in the conclusions of law, the reviewing court formerly could not consider the evidence but only the findings of fact. For the purpose of determining whether there was error in the conclusions of law, under such assignments the appellants admit, and the reviewing court accepts, the special findings of fact as true, limited, however, to the facts found within the issues formed. *Kerfoot*

v. *Kessener* (1949), 227 Ind. 58, 84 N. E. 2d 190; *Gross Income Tax Div.* v. *Surface Comb. Corp.* (1953), 232 Ind. 100, 111 N. E. 2d 50; *Property Owners Inc.* v. *City of Anderson* (1952), 231 Ind. 78, 107 N. E. 2d 3.

Where a fact necessary to sustain the issues was not found by the trial court, it was formerly regarded as not proved and was in effect a negative finding against the party having the burden of proof. *McCoy* v. *Farm Bureau Mut. Ins. Co.* (1953), 123 Ind. App. 424, 111 N. E. 2d 728; *Guraly* v. *Tenta et al.* (1956), 126 Ind. App. 527, 132 N. E. 2d 725; Flanagan, Wiltrout and Hamilton, *Indiana Trial and Appellate Practice*, §1732, p. 80.

Although where the primary facts found were of such a character that they necessitated the inference of an ultimate fact, such ultimate fact was treated as found by the court. *Smith* v. *Smith et al.* (1954), 124 Ind. App. 343, 115 N. E. 2d 217.

Rule 2-30 of the Supreme Court, effective January 1, 1958, provides as follows:

> "When special findings of fact are made in an action tried by the court without a jury and the court fails to find on some material issue of fact, on appeal from the judgment the reviewing court may either affirm the judgment if it is supported by undisputed evidence, or vacate the judgment and remand the action for findings on the material issues of fact."

In a quiet title action, the proponent can only recover on the strength of his own title, lack of title in his adversary being insufficient. *Kozanjieff* v. *Petroff* (1939), 215 Ind. 286, 19 N. E. 2d 563; *Kerfoot* v. *Kessener, supra; Central Federal Sav. & Loan Assn.* v. *Cummings* (1940), 216 Ind. 636, 25 N. E. 638.

With this rule of law in mind, it is essential to determine exactly what title, if any, the plaintiffs have to this real estate in controversy. The appellees derived their interest in this property from their father who in turn had purchased this property from the Van Der Weys; the Van Der Weys had purchased the land from one Jake L. Eggleston, who supposedly was acting as an agent for the owners, the appellants. As stated previously, however, the defendants had never authorized Eggleston to act on their behalf to sell this property. The only "authority" Eggleston had was derived from Battista Lama, the administrator.

In the case of *Moore* v. *Moore* (1900), 155 Ind. 261, 57 N. E. 242, it was held that the title to the real estate of a decedent and the right of possession thereto rests at the instant of the death of the intestate in his heirs, subject to the debts of the intestate, and they take and retain such title, with all the rights and incidents belonging thereto, subject to the right of the administrator to procure an order to sell the same to pay debts. This court also held that an executor or administrator has no authority to sell the real estate of his decedent except by order of court in absence of a testamentary provision authorizing such sale. In the case of *Duncan, Administrator* v. *Gainey* (1886), 108 Ind. 579, 9 N. E. 470, it was held that an administrator has no authority, in the absence of a testamentary provision to that effect, to sell real estate of his decedent except upon the order of the proper court; and where a sale is made without such authority, the purchase money does not become assets in the hands of the administrator, and the purchaser takes the land subject to its liability to be again sold under legal proceedings for the payment of debts. The court in this case further held that even when real estate is specifi-

cally devised to be sold for the payment of debts, it is necessary to obtain an order of court for its sale, unless by the terms of the will a different course of proceeding is prescribed.

As a general rule real estate on the death of the owner passes to the heir or devisee and the administrator or executor has no power over it, except such as may be given by statute. *Hankins, Adm'r.* v. *Kimball* (1877), 57 Ind. 42.

In the case of *Caflisch* v. *Clymer State Bank* (1929), 252 N. Y. 226, 169 N. E. 286; the court held that the plaintiff acquired no title or equitable claim in the 10 acre parcel through written contract with the administrators. They had no title to convey and were powerless to contract to make a sale of lands belonging to the heirs at law. If the plaintiff believed otherwise, his mistake was one of law and not of fact. This court in the case of *Sipe* v. *Union Bank & Trust Co.* (1941), 108 Ind. App. 526, 535, 29 N. E. 2d 342, stated: "An administrator may sell real estate belonging to his decedent at the time of his death, only after procuring an order from the court having jurisdiction to do so. The sale must be had in accordance with the order authorizing it, and not otherwise."

The laws of the state in which lands are situated must control in acquiring and transferring the title thereto. *Lucas* v. *Tucker* (1861), 17 Ind. 41. The procedure whereby a foreign administrator or executor may sell lands in this state is set forth in §7-951 Burns' 1953 Replacement, *et seq.*

Applying the above stated rules of law to the factual situation in the case before us, we must conclude that the sale of the property in controversy to the Van Der Weys by Jake Eggleston, acting on the direction of the administrator Battista Lama, and the deed of the ad-

ministrator to them was not alone sufficient to pass either legal or equitable title to the purchasers.

In the case of *Bailey et al.* v. *Rinker et al.* (1896), 146 Ind. 129, 45 N. E. 38, our Supreme Court stated: "A foreign executor may sell or procure an order of sale of lands in this State by complying with our laws in the same manner that a domestic executor can. . . . It would seem, then, if a foreign executor attempts to make a sale of real estate in this State by virtue of the power to sell conferred on him in the will he must comply with the above quoted section of the statute."

The appellees contend that even if the sale to the Van Der Weys did not pass good title, they are still entitled to the relief sought on the grounds that the appellants in accepting the $100.00 payment ratified the act of Eggleston, and thus they are estopped from asserting their claim to this real estate. Appellees rely upon the cases of *Moore* v. *Pendleton and Others* (1861), 16 Ind. 481; *Toni* v. *Kingan & Co.* (1938), 214 Ind. 611, 5 N. E. 2d 80. See also *American Car, etc., Co.* v. *Smock* (1911), 48 Ind. App. 359, 371, 91 N. E. 749, 93 N. E. 78. We do not consider this to be a valid contention in this case. The general rule is that full knowledge by the principal of all the material facts is indispensable to a ratification by him of the unauthorized act of his agent. 21 Am. Jur. §668. In the case of *Willison* v. *McKain* (1895), 12 Ind. App. 78, 39 N. E. 886, the court held that a principal is bound by his ratification of his agent's acts only to the extent he has knowledge of facts, and his acceptance of benefits from the agent's contract cannot be regarded as ratification of provisions as to which principal has no information.

We are of the opinion that the mere receipt of this $100.00 by the appellants is insufficient to create a ratification and estoppel, unless there is also evidence that the appellants had knowledge of the transaction and what this $100.00 payment constituted. There was no such special findings and the only evidence in the record purporting to show knowledge on the part of the appellants of this transaction is a phone call allegedly made by Henry Van Der Wey to the appellants. Mr. Van Der Wey himself testified that he could not be absolutely positive that it was the appellant he spoke to. The appellants denied any such phone call. Thus, the evidence on this point is disputed and we feel insufficient to establish a ratification of Eggleston's unauthorized act of selling this property.

Appellees further contend that if they have not acquired the fee simple title otherwise, they have acquired it through estoppel. Our Supreme Court said in *Puterbaugh* v. *Puterbaugh* (1892), 131 Ind. 288, 30 N. E. 519, that "Title may pass by an equitable estoppel." The law is thus stated in 19 Am. Jur., *Estoppel,* §87, p. 743:

"The rule is well settled in the modern law that the title to land or real property may pass by an equitable estoppel, which is effectual to take the title to land from one person and vest it in another where justice requires that such action be done. Stating the principle in the concrete and negative form in which it is sometimes framed, with the exception of property taken by judicial process, no one can be deprived, without his consent, of real property to which he has the legal title, unless he has estopped himself to assert his title. Thus, by intentional misrepresentation, misleading conduct, or wrongful concealment, a person may preclude himself from asserting his legal title to land or from enforcing an encumbrance on, or maintaining an interest in, real es-

tate. In order to establish an equitable estoppel against one asserting his title to real property, the party attempting to raise it must show an actual fraudulent representation, concealment, or such negligence as will amount to a fraud in law and that the party setting up such estoppel was actually misled thereby to his injury. . . .

"Occasionally, the question is raised as to whether the title to real property can be passed by means of an estoppel in pais, since there is no writing made by the person sought to be estopped in such cases and the statute of frauds requires some memorandum in writing in connection with the transfer of title to real property. The majority rule is to the effect that to permit the transfer of title by operation of equitable estoppel does not contravene the statute and that the legal title may be so transferred."

It is also stated in 19 Am. Jur., *Estoppel*, §133, p. 787 as follows:

"Numerous decisions predicating the existence of an estoppel to assert an interest in real property have been based upon evidence which included the element of nondisclosure of an interest at the time when the contract for the conveyance of the property in question was being consummated and also the element of a continued silence after the grantee had entered into possession of the property and expended money in improving it. In most of the cases in which the doctrine of estoppel has been adopted, the money of the party alleging the estoppel has been applied to the making of tangible improvements; and it is a rule almost of universal application that one who stands by and sees another purchase land or enter upon it under a claim of right and permits such other to make expenditures or improvements under circumstances which would call for notice or protest cannot afterward assert his own title against such person. As some of the authorities broadly state the principle, one who knowingly and silently permits another to expend money on land under a belief that he has title will not be permitted to set

up his own right to the exclusion of the rights of the one who made such improvements. The fact of such occupying party paying the taxes levied upon the property in question has also been regarded as sufficient ground for granting relief."

In a leading American case, *Wendell* v. *Van Rensselaer* (1815), 1 Johns Ch. (N. Y.) 353, the law was thus laid down by Chancellor Kent as follows:

"There is no better principle established in this Court, nor one founded on more solid considerations of equity and public utility, than that which declares, that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice and his conscience is bound by this equitable estoppel. Qui tacet consentire vidtur. Qui potest et debet vetare, jubet." See also *Bahar et al.* v. *Tadros etc. et al.* (1953), 123 Ind. App. 570, 112 N. E. 2d 754; *Dickerson* v. *Colgrove*, 25 L. Ed. 618.

In addition to claiming title by estoppel, appellees also assert that the trial court properly found against appellants on their counter-claim by reason of the laches of appellants. Appellants contend in the argument portion of their brief "that an action to quiet title is an action at law, and that laches is peculiar to equity and is therefore no defense at law." No Indiana cases are cited in support of their contention, and we find the law of Indiana to be to the contrary.

"There shall be no distinction in pleading and practice between actions at law and suits in equity; and there shall be but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which shall be denominated a 'civil action'. All courts which are vested

with jurisdiction both in law and equity may, to the full extent of their respective jurisdictions, administer legal and equitable remedies, in favor of either party, in one and the same suit, so that the legal and equitable rights of the parties may be enforced and protected in one (1) action." Sec. 2-101, Burns' 1946 Replacement.

"The defendant may set forth in his answer as many grounds of defense, counter-claim and set-off, whether legal or equitable, as he shall have." Sec. 2-1015, Burns' 1946 Replacement.

Laches is ordinarily a proper defense to an action to quiet title brought by one out of possession. 74 C. J. S. Quieting Title, §49, p. 70; 24 West's Indiana Law Encyclopedia, *Quieting Title*, §22.

Our Supreme Court said in *Ryason* v. *Dunten* (1905), 164 Ind. 85, 98, 73 N. E. 74: "As to the paragraphs to quiet title equitable principles are to be given due consideration in the application of the evidence introduced upon the trial." The court further quoted the following with approval:

"No doctrine is so wholesome, when wisely administered, as that of laches. It prevents the resurrection of stale titles, and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant that he make known his claims. It gives to the actual and longer possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds. It is a doctrine received with favor, because its proper application works out justice and equity, and often bars the holder of a mere technical right, which he has abandoned for years, from enforcing it when its enforcement will work large injury to many."

In another quiet title action, *Grantham Realty Corp.* v. *Bowers, Jr., Tr.* (1939), 215 Ind. 672, 22 N. E. 2d 832, it is stated as follows:

"One having a technical claim on property and who is in possession of all the facts concerning such claim cannot sit idly by and permit another, who believes himself to be the owner of such property, to carry the burden of the property while the owner of the claim by the passage of time makes sure that the property is worth carrying. An owner of a claim so doing is guilty of laches and a court of equity will not then permit him to assert such claim to the injury of the other party."

In *Granthm Realty* v. *Bowers, Jr., Tr., supra,* the appellee brought the action against appellant to quiet title and appellant also sought to quiet title. The appellant claimed the fee simple title through a series of conveyances originating in one who was admittedly the fee simple owner. Appellee's title originated in a tax sale and tax deed. The Supreme Court said that assuming that a fee simple title was not acquired by the tax deed but only a tax lien, nevertheless the appellant was guilty of such laches as to prevent it from prevailing and affirmed the judgment quieting the title in appellee. In the Grantham case appellant's predecessors in the title knew of the tax sale and took no action over a period of years, while appellee and his predecessors were paying the taxes. In the present case there is no showing that appellants had actual knowledge of the conveyances to appellees and their predecessors in title until 1950. However, as stated in 12 West's Indiana Law Encyclopedia, *Equity*, §53, ". . . if the circumstances were such as to have put a person on inquiry, and the means of ascertaining the truth were readily available had injury been made, the neglect or failure to make such inquiry will charge the person with laches the same as though he had known the facts." See also to the same effect, 30 C. J. S. *Equity*, §128 B, p. 553, and 19 Am. Jur., *Equity*, 505, p. 350.

In a more recent case, *Sawyer* v. *Kleine, supra,* this court said:

"It has always been held in Indiana that under the general denial in quiet title suits the defendant may give in evidence all defenses he may have, either legal or equitable. . . . Under Rule 1-3 the answer filed in this case entitled the appellant to all defenses heretofore available under the general denial, and so the appellant was entitled to prove any equitable defense to appellee's complaint that she might have."

It appears conclusively that in Indiana in quiet title actions, laches may be relied upon. *Kielczewski* v. *Rochwalik et al.* (1956), 126 Ind. App. 206, 130 N. E. 2d 785, 131 N. E. 2d 469. See also *Patterson* v. *State Bank, etc.* (1914), 55 Ind. App. 331, 102 N. E. 880; *Earl* v. *Van Natta* (1902), 29 Ind. App. 532, 64 N. E. 901.

Had we been called upon to decide the questions presented by this appeal prior to the adoption of Rule 2-30, effective January 1, 1958, it would have presented less difficulty. As herein before stated, where a fact necessary to sustain the issues was not found by the trial court prior to that Rule it was regarded as not proved and in effect a negative finding against the party having the burden of proof. We may now at this date affirm the judgment if it is supported by undisputed evidence, or remand the action for findings on the material issues of facts.

The trial court in this case made no finding as to any misrepresentation, intentional or otherwise, by appellants or any misleading conduct or wrongful concealment by them.

There is no finding that appellants had any knowledge of any attempted conveyances of the real estate, or that others were exercising full and complete rights

of ownership and dominion, or claiming an interest adverse to appellants over the years, or of facts which could charge them with such knowledge. The findings are silent as to any act or failure to act whatsoever on the part of appellants from the date of the death of their father, George A. Ruths, on April 4, 1930, and the giving of the deed by Battista Lama, as administrator, on May 8, 1933, until the filing of this action on October 24, 1950, with the exception of the signing of a receipt on July 15, 1933, by appellant Marguerette Orwall for $100.00 as heretofore mentioned.

The findings disclose that the taxes, drainage assessments and the School Fund mortgage were paid by others than the appellants. There were no facts specifically found by the court from which it could be concluded that appellants were guilty of such negligence as would amount to fraud. It was not specifically found as to whether appellants did or did not make known their claim of ownership to any of the persons in possession of the real estate. There is no specific finding that anyone relied upon either the silence or overt representations of appellants and in so relying changed his position to his detriment.

There was also no specific finding as to laches. Therefore, under the issues as formed by the evidence as we have above, it became and it was the duty of the trial court to make a specific finding as to laches upon which the court would conclude as a matter of law that the proper elements existed or did not exist to support a finding of laches on the part of the appellants.

In our opinion, findings of ultimate fact should be made covering the material matters discussed in the preceding paragraphs. Therefore, under Rule 2-30, judgment herein is ordered set aside and this case remanded to the trial court for findings on the material

issue of laches and for further proceedings consistent with this opinion.

Bierly, Gonas and Kelley, JJ., concur.

This case was argued May 5, 1960, and assigned to the author of this opinion after assuming office January 1, 1961.

NOTE.—Reported in 177 N. E. 2d 339.