### DUNCAN ET AL. *v.* AKERS

[No. 1168A187. Filed September 29, 1970. Rehearing denied November 16, 1970. Transfer denied March 3, 1971.]

---

* While Judge Cooper participated in a conference of the Judges, and concurred in this opinion, his untimely death occurred before the filing of this opinion.

512

*Robert C. Riddell, Locke, Reynolds, Boyd & Weisell,* of counsel, of Indianapolis, for appellants.

*Benton R. Millis, Willsey & Willsey,* of Indianapolis, *James A. Emmert,* of Shelbyville, for appellees.

CARSON, J.—This action was instituted in the Shelby Circuit Court wherein plaintiffs-appellees filed their complaint for ejectment.

For the purpose of clarity the facts from the record before us may be summarized as follows:

Plaintiffs-appellees own Lot No. 7 in a subdivision known as "Triton Acres". The Duncans, defendants below, own Lot No. 6 in the same subdivision, which lot is identical with and adjacent to Lot No. 7 owned by appellees. On April 2, 1967, the Duncans entered into a written contract with defendant-Lindner Homes, under the terms of which Lindner Homes was to construct a home on said Lot No. 6 owned

by the Duncans in consideration of the sum of $16,495. Thereafter, Lindner Homes hired a surveyor to survey Lot No. 6 and indicate the site of construction by placing stakes thereon. The surveyor, by mistake, placed the stakes on Lot No. 7 belonging to appellees, instead of Lot No. 6, owned by the Duncans. After the stakes had been placed, Lindner Homes proceeded with construction of the dwelling during the months of May and June of 1967.

On or about July 5, 1967, appellees notified Lindner Homes that the house was being built on the wrong lot, and to cease construction and vacate the premises. Thereafter, on September 25, 1967, appellees filed suit for ejectment. To plaintiffs-appellees' complaint, defendants-appellants filed answer in denial and two paragraphs of counterclaim. Plaintiffs-appellees then filed a demurrer to each paragraph of counterclaim for failure to state facts sufficient for a cause of action, and ultimately filed amended demurrers, which were sustained by the trial court. Defendants-appellants were ruled to plead over on or before April 12, 1968, which date was later extended to July 1, 1968. In the interim plaintiffs-appellees filed a motion for summary judgment on March 19, 1968. On July 26, 1968, defendants-appellants sought, and were granted, a change of judge. Thereafter, a hearing upon appellees' motion for summary judgment was set for September 7, 1968. The hearing was held on said date and the court took its ruling under advisement. However, on September 7, 1968, defendants-appellants finally filed an amended counterclaim which, pursuant to the court's ruling to plead over, was approximately two months late.

After the various proceedings and delays, the trial court, on September 13, 1968, granted appellees' motion for summary judgment and held that appellees were the owners in fee simple of the real estate on which the appellant, Lindner Homes, had made the improvements and that they were entitled to recover possession of the real estate and that the defendants-appellants take nothing by their counterclaim.

Thereafter, and within due time, appellants praeciped for a complete transcript of the entire record. Following the judgment of the trial court, defendants-appellants filed an assignment of errors, consisting of five specifications, which reads as follows:

"1. The Court erred in granting plaintiffs' Motion for Summary Judgment on defendants' Amended Counterclaim.

"2. The Court erred in sustaining plaintiffs' Motion for Summary Judgment as to defendants' Amended Counterclaim.

"3. The decision is contrary to law in that defendants' Amended Counterclaim stated a cause of action and defendants were entitled to have the allegations contained in their Amended Counterclaim put to a trial.

"4. The decision is contrary to law in that there is no evidence to support the Entry of Judgment against defendants on their Amended Counterclaim.

"5. The Court erred in entering judgment against defendants on the Amended Counterclaim in that a Summary Judgment may not be used to test the sufficiency of a pleading."

Appellees maintain, for the first time, in this court, that inasmuch as appellants' amended counterclaim was filed nearly two months late, the same was not properly before the trial court. While it is true that appellants were ruled to plead over on or before July 1, 1968, and an amended counterclaim was not filed until September 7, 1968, we find no instance of record where appellees filed timely objection below to the late filing.[1]

Furthermore, as the trial court entered summary judgment upon appellants' amended counterclaim, we must assume that the court considered the filing as timely and disposed of the matters presented upon the merits. Therefore, the sole question presented to this court is whether the trial court

---

1. It should be noted that although appellees, in their motion for summary judgment, state that: "The defendants have failed to file amended counter-claim.", at the time appellees filed their motion for summary judgment, the amended counterclaim was not due.

properly granted summary judgment to appellees on appellants' amended counterclaim.

In support of the trial court's ruling, appellees assert that the Occupying Claimants' Act (Acts 1881 (Spec. Sess.), ch. 38, § 694, p. 240, Ind. Stat. Anno., § 3-1501, *et seq.*, Burns' 1968 Repl.) provides an exclusive remedy in this instance and as appellants do not contend to be within its provisions, the court properly granted summary judgment. We cannot agree with appellees' contention in this respect. Our Supreme Court held to the contrary in the recent decision of *Phar-Crest Land Corporation* v. *Therber* (1969), 251 Ind. 674, 244 N. E. 2d 644, at 648, 16 Ind. Dec. 570, at 575-576, wherein the court stated:

> "Finally, it is urged that the Occupying Claimant's Act, Burns' § 3-1501 et seq., is the appellees' remedy. We find no law that compels the appellees to follow such a statutory remedy for reimbursement for improvements made. The appellees had the right to elect whether to stand upon the equitable principle of estoppel and laches and retain possession and title, or to accept the benefits of Burns' § 3-1501. This statute offers reimbursement where improvements have been made in situations that go beyond equitable estoppel and laches or where the facts do not support such a position, as the statute says, when improvements have been made 'in good faith'."

Assuming that the remedy afforded by the Occupying Claimants' Act is not exclusive, appellee urge, in the alternative, that Indiana follows the common law rule that improvements placed upon the real estate of another accrue to the land and are lost by the improved. In support of their position, appellees cite a number of early Indiana decisions, including: *Dutton* v. *Ensley* (1898), 21 Ind. App. 46, 51 N. E. 380; *Graham* v. *The Connersville and New Castle Junction R. R. Co.* (1871), 36 Ind. 463; *Rees* v. *Jared* (1860), 15 Ind. 142; *Seymour* v. *Watson* (1841), 5 Blackf. 555; *Chesround* v. *Cunningham, et al.* (1832), 3 Blackf. 82; *Boston* v. *Dodge* (1818), 1 Blackf. 19.

Conversely, appellants assert that by the allegations of their amended counterclaim they seek the jurisdiction of equity and that equity is not bound strictly to the common law. Although the authorities cited by appellees have not been consistently applied, the courts have deviated from strict application of the common law rule and have applied equitable principles in permitting recovery by an innocent improver of another's real estate.

*Phar-Crest Land Corporation* v. *Therber, supra,* (1969), 251 Ind. 674, 244 N. E. 2d 644; *Grantham Realty Corp.* v. *Bowers, Jr., Tr.* (1939), 215 Ind. 672, 22 N. E. 2d 832; *Hutter* v. *Weiss* (1961), 132 Ind. App. 244, 177 N. E. 2d 339; *Bahar et al.* v. *Tadros, etc., et al.* (1953), 123 Ind. App. 570, 112 N. E. 2d 754.

Although the facts and circumstances inherent in the above decisions differ by varying degrees from those in the instant case, these later decisions enunciate a liberalization of the strict common law rule and the principles utilized therein seem appropriate for application in this instance.

In *Phar-Crest Land Corporation* our Supreme Court discussed the equitable principles of laches and estoppel as they apply to a case where one is asserting legal title to real estate which another has improved, and at 679 of 251 Ind., at 647 of 244 N. E. 2d stated:

"The evidence in this case shows that the appellees have been injured by reason of the improvements made on the property if appellant's claimed legal title prevailed. Silence when there is a duty to speak can constitute fraud, and a failure to assert one's right to real estate when his interest is challenged, to the extent that the other party assumes no claim is made thereto, can constitute fraud. Fraud in many instances is 'constructive' in that there may not be any active intentional purpose to deceive or defraud, yet the non-action or action is so prominent and misleading as to cause a party to rely thereon. In our opinion, the trial court found in this case such a situation existed.

" 'As stated infra § 69 a, fraud is an element of estoppel only in the sense that a fraudulent result would follow a

denial of the truth of the representation, and not in the sense that the representation must have been made with an intent to deceive.'
"31 C.J.S. Estoppel § 59, p. 376."

In *Bahar et al.* v. *Tadros etc., et al., supra,*[2] after recognizing the common law rule, this court proceeded to enunciate the following principles at 583-584 of 123 Ind. App., at 760 of 112 N. E. 2d:

"It is said to be a very familiar rule of the law of estoppel that if the owner of an estate stands by and sees another erect improvements on the estate in the belief that he has a right to do so and does not interpose to prevent the work, he will not be permitted to claim such improvements after they are erected. 76 A.L.R. 304 and cases cited.

\* \* \*

"We believe it is a general recognized rule of law that equity recognizes a lien which is based upon general consideration of justice between the parties to the transaction involved. Such a lien may result by implication from a duty resting on the owner of property which is the subject matter of the lien and the lien is completed by equity in pursuance of the maxim quoted in *Carpenter* v. *Dummit, supra,* [(1927), 221 Ky. 67, 279 S. W. 700, 10 RCL. 351] 'that is deemed done that ought to be done'. Failure on the part of a court of equity to recognize the general rule and to grant relief under the occupying claimant statute under the facts of this case upon which this decision is made would have the effect of granting immunity to the owner and thusly permit him to the use and benefits of the improvements made on his property. It is apparent that the appellants did have an equitable lien upon the real estate based upon the general considerations of justice and that it is the duty of a court of equity to see that is done that ought to be done."

Again, in *Hutter* v. *Weiss, supra,* at 256 of 132 Ind. App., at 345 of 177 N. E. 2d, this court quoted with approval the

2. The principles applied in *Bahar* were followed by this court in *Sicanoff* v. *Miller et al.* (1960), 131 Ind. App. 535, 167 N. E. 2d 481 (Transfer denied); and *Myers et ux.* v. *McGowne et ux.* (1965), 138 Ind. App. 163, 212 N.E. 2d 411.

language of Chancellor Kent in *Wendell* v. *Van Rensselaer* (1815), 1 Johns Ch. (N. Y.) 345, 353, as follows:

" 'There is no better principle established in this Court, nor one founded on more solid considerations of equity and public utility, than that which declares, that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice and his conscience is bound by this equitable estoppel. *Qui tacet consentire vidtur. Qui protest et debet vetare, jubet.'* "

We are quite cognizant of the fact that the case here before us differs from *Phar-Crest, Bahar* and *Hutter* to the extent each of those cases presented a factual situation where the improver of another's real estate held some semblance or "color of title" to the real estate improved. However, the fact that in each of those cases the improver held "color of title" was not, in our opinion, the sole reason for the application of the principles above quoted. The phrase "color of title" was defined by this court in *Philbin et al.* v. *Carr et al.* (1920), 75 Ind. App. 560, at 577-578, 129 N. E. 19, at 25 (Transfer denied), as follows:

"As a matter of general law, color of title must be a document purporting to convey title to real estate, but which for some reason does not do it. It must designate a grantor and a grantee, must contain apt words of conveyance, and a description of the land intended to be conveyed. An examination of a large number of cases has wrought the convection [conviction] that no court ever has held otherwise where the question was legitimately decided, and that all statements to the contrary, when scrutinized, will be found to be either *dicta* or instances of carelessness of expression."

Applying the definition stated in *Philbin,* appellants in the case at bar do not, and cannot, maintain to have held "color of title" to the real estate in question. Appellants base this action merely upon their alleged innocence and a mistake by

the surveyor. Realizing the lack of Indiana precedent for their position, appellants have sought this court's consideration of the case law from other jurisdictions. The law in this area is quite thoroughly analyzed in an annotation at 57 A.L.R. 2d 363.[3] It appears that the courts of other jurisdictions, when confronted with a set of circumstances such as here presented, have consistently granted the innocent improver a remedy in equity.

In *Farmers National Bank of Bloomsburg* v. *Albertson* (1964), 203 Pa. Sup. 205, 199 A. 2d 486, plaintiff-creditor brought suit to impose an equitable lien upon realty owned by parents of the debtor. The debtor had borrowed money from the plaintiff-creditor to erect a house and said house was erected by mistake upon the land of the debtor's parents. The Pennsylvania Court, in affirming the trial court's imposition of the lien, at 489 of 199 A. 2d, stated:

> "If the parents were unjustly enriched, equity has the power to fix a lien upon the property. General Casimir Pulaski Building & Loan Association v. Provident Trust Co. of Philadelphia, 338 Pa. 198, 202, 12 A. 2d 336 (1940). Where one party has been unjustly enriched at the expense of another, he is required to make restitution. In order to recover, there must be both an enrichment and an injustice resulting if the recovery for the enrichment is denied. Meehan v. Cheltenham Twp., 410 Pa. 446, 449, 189 A. 2d 593 (1963).
>
> "Ordinarily, where one in possession of land which he mistakenly believes that he owns builds a house thereon, he is not entitled to restitution from the owner of the land. Restatement of the Law of Restitution, § 42 (b) and Illustration 1 on page 170. As the comment on this section in the Restatement indicates, the rule is harsh and not wholly consistent with the principles for restitution for mistake. Its harshness has been substantially relieved, in most cases, either by statute or by equity in case of land. p. 168."

And, further, at 490:

> "[I]t would be unjust for the defendants to be permitted to retain the house in question free and clear from all

---

3. See also: *Improvements—Measure of Recovery*, Anno., 24 A.L.R. 2d 11.

encumbrance when it was built largely from funds supplied by the bank."

Likewise, *Cecil Ruby Company* v. *Jones,* (Tex. Civ. App. 1965), 398 S. W. 2d 337, presents a set of circumstances quite similar to those in the instant case. The dispute in that case involved the placing of a house upon the wrong lot by mistake. As in the case at bar, the lots in question were adjacent and similar in appearance. The Texas court, finding that the plaintiff-improver had, in an act of good faith, placed the house upon the wrong lot by mistake, ordered a lien imposed upon the property.

Furthermore, *Toalson* v. *Madison* (Mo. App. 1957), 307 S. W. 2d 32, involved an innocent mistake of ownership relating to two adjacent lots with the result that improvements were placed upon the wrong lot. The Court of Appeals reversed the trial court's denial of relief to the innocent improver, and in so doing, at 34 of 307 S. W. 2d, stated:

> "American Law holds it to be inequitable, regardless of fraud, to allow another to be enriched by expenditures made on land by one who supposed himself, in good faith, to be the owner. *Schleicher* v. *Schleicher,* 120 Conn. 528, 182 A. 162, 164, 104 A.L.R. 572. See 4 Pomeroy's Equity Jurisprudence, par. 1241.
>
> \* \* \*
>
> "In 104 A. L. R. 588, note (b) it is said that certain cases, including *Valle* v. *Fleming,* 29 Mo. 152, *McLean* v. *Martin,* 45 Mo. 393, and *Calloway Banks* v. *Ellis,* 215 Mo. App. 72, 238 S. W. 844, support the general doctrine that even in the absence of fraud, acquiescence with knowledge, or other inequitable conduct on the part of the owner of land one who, mistakenly believing himself to be the owner, in good faith makes improvements on premises, may as plaintiff, recover therefor, by way of lien or otherwise, when the circumstances render such relief just and equitable; . . . ."

In *Pull* v. *Barnes* (1960), 142 Colo. 272, 350 P. 2d 828, the plaintiffs had erected a cabin upon the land of the defendants due to a mistaken belief as to the boundary lines. The

court in granting favor to the innocent improvers, stated the following principle of law at 829 of 350 P. 2d:

> "As an abstract principle of law it is true that the moment a house is built upon land, it belongs to the owner of the land by mere operation of law and he may possess and enjoy it as his own. But this is merely stating the technical rule of law by which the owner seeks to hold what, in a just sense, he never had the slightest title to; that is, the house if it were not attached to the realty. It is not answering the objection by merely and dryly stating that the law so holds; for admitting this to be so, in law, such a situation furnishes a strong ground why equity should and does interpose and grant relief in proper cases."

The Colorado court in *Pull* concluded its decision by reversing the trial court's denial of relief to the innocent improver and recognizing the flexibility of a court of equity in such an instance, remanded the cause with instructions for the trial court to hold a hearing and determine the feasibility of removing the cabin and if it should find removal of the cabin not to be feasible, to impose a lien upon the premises in favor of the innocent improver.[4]

Subsequent to a review of the decisions from other jurisdictions, we are of the opinion that the modern trend favors relief in equity to an innocent improver of another's real estate who has acted under a mistake. The common law rule has not been recognized and applied by the courts of this State for a number of years and the apparent harshness in its application serves a just rationale for its growing obsolescence.

It is our opinion that appellants are entitled to a trial upon the allegations of their amended couterclaim for equitable relief and that the trial court improperly granted summary judgment against them. However, it should be noted that appellants seek the aid of equity and

---

4. As it relates to the power of a court of equity to render a decree which is just under the circumstances, See: *Jensen* v. *Probert* (1944), 174 Ore. 143, 148 P. 2d 248, wherein the court on appeal held that under the circumstances of the case, to permit removal of the house was more equitable than imposition of an equitable lien.

must comply with the burden of proof which equity requires. Under these circumstances it is, therefore, incumbent upon appellants to establish by clear and convincing evidence their innocence in placing the house on the premises. The trial court is not limited in respect to the relief afforded and should mold its decree so as to render justice under the circumstances as revealed by the evidence.

Judgment reversed and cause remanded with instructions.

Lowdermilk, C.J., Cooper* and Sullivan, JJ., concur.

NOTE.—Reported in 262 N. E. 2d 402.

---

\* While Judge Cooper participated in a conference of the Judges, and concurred in this opinion, his untimely death occurred before the filing of this opinion.